## COPLAND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4290.

Circuit Court of Appeals, Seventh Circuit.

June 5, 1930.

502

Oscar Fainman, of Chicago, Ill., for petitioner.

John H. McEvers, of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

This case involves income taxes for the year 1919 in the sum of $8,814.60, and the appeal is taken from an order of the Board of Tax Appeals, which determined a deficiency in the above amount for the year involved. The case is brought to this court by petition for review pursuant to sections 1001–1003 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 109, 110 (26 USCA §§ 1224–1226).

SPARKS, Circuit Judge.

The facts are undisputed. In May, 1919, petitioner entered into a joint venture with Max Epstein and Elias Mayer in connection with a certain transaction relating to the sale and disposition of certain shares of capital stock of the North American Oil & Refining Corporation. In the latter part of that month the joint adventurers entered into a contract with the North American Oil & Refining Corporation for that purpose. Under the terms of the joint venture, petitioner, Max Epstein, and Elias Mayer agreed to divide any profits or bear any losses arising out of that transaction in equal parts, to wit, one-third to each.

After this contract was signed, a copy thereof was given to the petitioner. Petitioner then desired to assign his interest under that contract to his wife, and on June 2, 1919, executed to Mildred Copland, his wife, a written assignment under seal, which is as follows:

"Know All Men By These Presents, that for and in consideration of the sum of One Dollar ($1) and other good and valuable considerations to me in hand paid, receipt of which is hereby acknowledged, I, David Copland, of Chicago, Cook County, Illinois, do hereby transfer, assign and set over unto Mildred Copland, of Chicago, Cook County, Illinois, all of my right, title and interest in and to a certain agreement bearing date the ———— day of May, 1919, made and entered into by and between North American Oil & Refining Corporation, as first party, and Max Epstein, David Copland and Elias Mayer, of Chicago, Illinois, as second parties, and all my right, title and interest in and to any profits, issues and income that may arise thereunder; and I do hereby authorize, empower and direct Elias Mayer to account to and with the said Mildred Copland for all profits, issues and income arising under said contract in the same manner and with the same force and effect as if such accounting were had and made with me personally.

"In witness whereof, I have hereunto set my hand and seal this 2nd day of June, A. D., 1919.

"David Copland    (Seal)"

Elias Mayer was the syndicate manager, and as such had complete charge of all of the syndicate's operations. An executed copy of this assignment was, on or about June 2, lodged with Elias Mayer; the syndicate man-

ager, and at all times thereafter Mayer, as manager of the syndicate, recognized and treated Mildred Copland as the party in interest of one of the third parts. After the assignment was made and an executed copy thereof delivered to the syndicate manager, petitioner had no further connection with the transaction and made no claim of any kind in connection therewith.

At the time the assignment was executed and delivered by petitioner to Mildred Copland, no profits had accrued to the joint venture; but thereafter the syndicate marketed the stock of the North American Oil & Refining Corporation, which, in the latter part of November, 1919, resulted in a profit of $81,000 to the syndicate. After this $81,000 profit was realized there was no other transaction; there was no other profit, either before or after, and the syndicate was closed. On December 27, 1919, the syndicate manager, Elias Mayer, distributed the said profits of $81,000 in the following manner: $27,000 to himself, $27,000 to Max Epstein, and $27,000 to Mildred Copland, which distribution was made by the syndicate manager, delivering his check payable to the order of each of said individuals, respectively, and in the aforesaid amounts. Mildred Copland included said sum of $27,000 as part of her gross income for the year 1919, and paid the income taxes thereon.

The check for $27,000 payable to the order of Mildred Copland, representing her one-third share of the profits of the aforesaid transaction, was indorsed and deposited by her in her own bank account in the First National Bank of Chicago, and she has used same for her own personal benefit. Petitioner has at no time made any claim or demand upon her by reason of her receipt of the money, nor has any part of it been returned to petitioner, nor is she in any way indebted to him for that sum, or any part thereof.

The sole question for decision is whether this sum of $27,000 is income of and taxable to the petitioner, as found by the Commissioner, the determination of which is governed by the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1062, and the provisions applicable to this controversy are as follows:

"Sec. 210. * * * there shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax" etc.

"Sec. 211. (a) * * * in addition to the normal tax imposed by section 210 of this Act, there shall be levied, collected, and paid

for each taxable year upon the net income of every individual, a surtax. * * * "

"Sec. 212. (a) That in the case of an individual the term 'net income' means the gross income as defined in section 213, less the deductions allowed by section 214."

"Sec. 213. That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities * * * or gains or profits and income derived from any source whatever."

It is admitted by appellant that the assignment constituted a gift, but he insists that it was made in good faith, pursuant to law, was fully executed, and hence binding on all parties concerned. He further admits that the money received by his wife is properly classed as income, but he insists that it is his wife's income and should not be charged to him. It may be safely said that, if petitioner's premises are correct, his conclusions are necessarily sound.

The Commissioner, however, attacks on two general grounds the premises upon which petitioner's conclusions are based. First, he contends that the organization referred to as "the syndicate" was in fact a partnership composed of Mayer, Epstein, and petitioner, and that under the law a member is required to pay income tax on his distributive share, whether distributed or not, and he cannot escape the tax by assignment. There is no direct evidence to the effect that the organization was a partnership, and we think the evidence does not warrant the inference. The most that can be said in this respect is that petitioner and his associates merely engaged in a single joint 'venture, and it is well established that special agreements for particular adventures and joint undertakings which are limited in character do not constitute partnerships. Hey v. Duncan (C. C. A.) 13 F.(2d) 794; Chicago Die & Electric Co. v. Nathan, 141 Ill. App. 171. Second, the Commissioner contends that the alleged gift is not sufficient to avoid the assessment, for the following reasons: (1) It violates the Illinois Statute of Frauds (4 Callaghan, p. 3940); (2) it was not based upon a valuable consideration; (3) the corpus of the gift was not delivered to the donee, but to the donor's agent; (4) the corpus of the gift was not in existence at the time of the assignment; (5) it is revocable by the donor;

504

(6) the donee did not become liable for donor's share of the liabilities, but, on the contrary, the donor remained obligated to pay them, if any.

■ The section (§ 6) of the Illinois Statute of Frauds (Callaghan's Ann. St. 1924, c. 59, par. 6), upon which the Commissioner relies, is as follows:

"Every conveyance of goods and chattels on consideration not deemed valuable in law shall be taken to be fraudulent, unless the same be by will duly proved and recorded, or by deed in writing duly acknowledged or proved and recorded as in the case of deeds of real estate, or unless possession shall really and bona fide remain with the donee."

This section of the statute was enacted to protect creditors and innocent purchasers for value. Each state, so far as we are advised, has enacted the same or a similar statute, and each state has given it the same construction. The transfers referred to therein are always valid as between the parties, and as to every one else except creditors and innocent purchasers for value. They are not void, but voidable. In the case of Seavey v. Seavey, 30 Ill. App. 625, the court said:

"We think Sec. 6, Chap. 59, R. S., title 'Frauds,' [which is the same as the one under consideration] does not apply to the case at bar, because * * *

"2. The gift in question is not attacked by creditors of the donor, or required for payment of debts against his estate, and is founded upon a good consideration (love and affection), and hence can not be assailed by the donor, his heirs, administrators or executors."

■ Neither is it necessary that there be a valuable consideration in cases where creditors or innocent purchasers for value are not concerned; in fact, as between the donor and donee, no consideration is necessary to support a gift, since the absence of consideration is essential to a gift. Martin v. Martin, 202 Ill. 382, 67 N. E. 1. It is essential to a gift inter vivos that it be absolute, irrevocable; that the giver part with all dominion and control over the property; that the gift go into effect at once and not at some future time; and that there be a delivery to the donee, and such change of possession as puts it out of the power of the donor to repossess himself of the property. People v. Csontos, 275 Ill. 402, 114 N. E. 123. In the instant case there were no conditions to the gift; it was absolute; it became immediately effective; there was a delivery to Mayer for the donee, and at that moment it became irrevocable, and the donor was powerless thereafter to repossess himself of the corpus of the gift.

Appellee has called our attention to Rosenwald v. Commissioner (C. C. A.) 33 F. (2d) 423, and Bing v. Bowers (D. C.) 22 F. (2d) 450, as determinative of the question of transferring, without consideration, a thing not in existence. In these cases the donor never parted with possession and control of the corpus; in the instant case he did, and the transfer included more than future profits—it included not only the right to draw the profits, but the very thing which would produce them.

■ Appellee further insists that the gift was not completed because the assignment was never delivered to the donee, but was delivered to Mayer, who was the donor's agent. The evidence shows conclusively that Mayer was not the donor's agent in relation to this assignment. The petitioner delivered the assignment to Mayer, the manager of the syndicate. He was the one to whom it should have been delivered by the donee had she received the actual possession of it, but the petitioner delivered it for her. This constituted as complete a delivery to her as if she had received it in her own hands. Telford v. Patton, 144 Ill. 611, 33 N. E. 1119.

■ It is further contended by appellee that the future profits of the venture were not assignable, for the reason that they were not then in existence. The instrument in controversy not only assigns to his wife all of petitioner's right, title, and interest in and to any profits, issues, and income that may arise thereunder, but also all of his right, title, and interest in and to the syndicate agreement. This assignment includes more than future income—it includes the thing that produces the income, and the right to receive the income. The fact that petitioner remained liable for the syndicate's losses cannot affect the transfer. This was evidently petitioner's wish, and it violates no law.

Appellee suggests that such part of the $27,000 given to Mrs. Copland as was attributable to the personal services of the petitioner is taxable to him as income. There is no evidence that petitioner rendered personal services, or that he was entitled to or claimed any compensation whatever.

The order of the Board of Tax Appeals is reversed.