## SOUTHERN POWER & MANUFACTURING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7909.

Circuit Court of Appeals, Fifth Circuit.
March 4, 1936.

Rehearing Denied April 3, 1936.

John J. Finnorn, of New Orleans, La., for petitioner.

Helen R. Carloss, Sewall Key, and Berryman Green, Sp. Assts. to Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

In 1928 the taxpayer, Southern Power & Manufacturing Company sold its plant, and an income tax was assessed by the Commissioner on a profit from the sale upon a no cost basis. The Board of Tax Appeals upheld the assessment. The plant was acquired by the taxpayer upon its organization as a corporation on April 7, 1923, in exchange for 700 shares of its capital stock issued 300 shares to J. E. Pottharst, 300 shares to J. George Jones, and 100 shares to R. N. Morgan. The Board held that the transferred property immediately before its exchange for the stock was owned by Pottharst, Jones, and Morgan in identically the same proportions as they took stock, and that immediately after the transfer they owned all the stock of the corporation and controlled it so that there was by the exchange no realized profit or loss to the previous owners of the property, and the corporation took the property over on the same cost basis at which the previous owners had acquired it, which was no cost, all by virtue of Revenue Act of 1928, § 112 (b) (5), 26 U.S.C.A. § 112 (b) (5) and note, and section 113 (a) (8), 26 U.S.C.A. § 113 note. The taxpayer corporation contends that Pottharst alone owned the property immediately before its transfer, and that there was a real sale of it by him to the corporation at an appraised price of $195,000, and that, since Pottharst did not own the stock of

the corporation afterwards in substantially the same proportion that he had owned the property and did not control the corporation, the corporation under section 112 (b) (5) should be held to have acquired the property at a cost to it of $195,000. The case therefore turns on the question of fact, How was the property owned immediately before its transfer to the corporation?

The evidence makes it clear that Pottharst alone originally dealt with the town of Poplarville, Miss., and obtained from it on March 22, 1923, a lease to be merged after legislative approval into a sale of the town's electric light and waterworks plant, which is the property in controversy, without his paying anything for it save the covenants to operate it and to furnish the town certain street lights and water for fire protection and other public purposes, the burden of which ran with the property. The lease contract stated it was not to be assigned except to a corporation with sufficient capital to operate the plant. Pottharst got Jones to interest money capital for such a corporation, and Jones induced Morgan on a general agreement among the three to take 200 shares in the corporation and pay $20,000 cash for them, Morgan to have an additional 100 shares and Pottharst and Jones 300 shares each against the value of the plant and franchise to be gotten under the contract with the town, so that each would hold a one-third interest in the corporation. No formal transfer by Pottharst to Jones and Morgan was made of any interest in the contract which Pottharst had with the town in his own name, but an attorney was employed to handle the formation of the corporation and on the day of its organization, April 7, 1923, by his direction, Pottharst signed a letter addressed to the corporation reading thus: "This will acknowledge that the contract of lease entered into between myself and the Town of Poplarville, Mississippi, on March 22nd, 1923, for the lease of said Town's electric light and water plant, was entered into in my name alone for the purpose of convenience, and that the said contract is in fact owned by the following named persons in the proportions set opposite their names: J. George Jones 3/7, J. E. Pottharst 3/7, R. N. Morgan 1/7." The minutes of the organization meeting of the corporation show a reading of this letter and a motion made and carried to purchase the lease contract from the owners for 700 shares of the capital stock to be paid to J. George Jones 300 shares, J. E. Pottharst 300 shares, R. N. Morgan 100 shares. Afterwards the minutes show a sale of 200 shares to R. N. Morgan for $100 per share, making the total capital outstanding to be 900 shares. The minutes also show an appraisal of the franchise acquired at $75,000 and of the physical property of the plant at $120,000, but that the whole should be carried on the books at $70,000, the par value of the stock issued for them. These minutes are signed by Jones as president, and by Morgan as secretary of the corporation. The next year the Mississippi Legislature approved the sale, and legal title was passed through Pottharst to the corporation. The corporation sold out its plant in 1928 as above stated. Pottharst, Jones, and Morgan testified before the Board that the contract belonged wholly to Pottharst until he transferred it to the corporation, and that they were to have only stock in the corporation under their agreement with one another.

When the transfer occurred, the Revenue Act of 1921, 42 Stat. 227, was in force and contained in section 202 (c) (3), 42 Stat. 230, provisions similar to those in the Revenue Act of 1928 here applied. It does not appear that Pottharst then returned for taxation a profit to him of $195,000 realized by the sale to the corporation as he should have done consistently with his present testimony. The Board was well justified in finding that the formal record of the transfer contemporaneously made states the truth, that it was then considered that Pottharst had come to hold the title to the contract for the benefit of all three, and that he was transferring it to the corporation for all three. The formal documents thus representing the matter bear the signature of each of the witnesses who now, after ten years, remember it otherwise. These documents are the records of the taxpayer, and are original evidence against it, being its own admissions, if not indeed the written memorial of the transaction and the exclusive evidence of it. There was thus at least a conflict of evidence to be settled by the Board. Its finding of the fact is not subject to review in this court.

Petition denied.