## KELL et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8104.

Circuit Court of Appeals, Fifth Circuit.

Feb. 24, 1937.

John B. King and Harry C. Weeks, both of Wichita Falls, Tex., for petitioners.

Edward H. Horton, Warren F. Wattles and Sewall Key, Sp. Assts. to the Atty. Gen., Robert H. Jackson, Asst. Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and Herman Oliphant, Gen. Counsel, Department of Treasury, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition for review tests whether the Board was right in sustaining the Commissioner's determination (1) That petitioner, and not his wife and children, was the owner of a one-fourth interest in properties of the "R. O. Harvey lease account," a body of mineral lands, leases, and interests belonging one-fourth to R. O. Harvey, one-fourth to J. J. Perkins, one-fourth to S. H. Cullum, and one-fourth to Frank Kell, or to his wife and children according to the legal effect of the facts established by the undisputed evidence oral and written; (2) that in the year 1920 Kell, by selling his interest in a railroad building venture to his associate, one Hamon, had received a taxable profit to be measured as a closed transaction by the cash and notes received in that year without deductions for unpaid material bills which Hamon agreed to, but, dying in that year, did not, pay, and which in subsequent years were asserted against, but not paid by, Kell; (3) that in ascertaining Kell's profit from the sale there should be taken into consideration in determining his basic costs for tax purposes the amounts received by Kell and Hamon from citizens and communities along the proposed route of the railroad as grants and donations in aid of its construction. The opinion of the Board reported in 32 B.T.A. 21 contains a statement of the facts on which their conclusions were rested, which, except in one or two particulars, is complete and full. We will therefore content ourselves with a summary of the facts as they there appear. This is what occurred as to the Harvey lease account. Desiring his wife and children to purchase on time, and to sign notes for, an interest in certain mill properties, Kell told them that if they would do so he would transfer to them his interest in the lease account assuring them they could expect to derive from it sufficient funds to pay the purchase notes. This understanding, though had in 1918, was not communicated to his associates in the Harvey lease account until in May, 1919, when Kell advised Harvey that he had transferred his interest in the partnership to Mrs. Kell and the children, and directed that proper changes be made on the books of the partnership. Harvey testified that he told Kell it would be so recorded and instructed the bookkeeper at the time to make a record of it. The other members of the partnership were advised of Kell's action, and before the sale in July, 1919, with the profits from which, among other matters, this proceeding is concerned, they knew and recognized that the Kell family owned the interest in the partnership that had been theretofore owned by Kell. At the time he verbally gave direction as to this interest, Kell intended to confirm, and thought he had confirmed, it by letter, and, later discovering that this had not been done, he wrote the following letter:

"Wichita Falls, Texas, August 30, 1919.

"Mr. R. O. Harvey, Office.

"Dear Ralph:

"Confirming my verbal notice to you some ninety days since, I beg to advise that the interest in the Harvey oil lease account which you have carried for my personal account is the property of Mrs. Kell, Mrs. O. C. Bullington, Mrs. J. F. O'Donohoe, Miss Willie Mae Kell, Miss Sybil Kell, Mrs. Wiley Blair, Jr., Joseph A. Kell, and Miss Mary Joe Kell, share and share alike.

"If the title to this property is carried in my name you continue it in this way so that the title can be made in the event of a sale, but any dividend arising from the sale of any of the R. O. Harvey Lease Account is payable to the parties above named, share and share alike, and checks should be

made payable to Mrs. Frank Kell for herself and the parties above named.

"Will you kindly take notice of the disposition of this property and enter same on your books in accordance herewith.

"Any liability that may be incurred will be due to be paid by them, but I will hold myself personally responsible for the payment of same.

"Very truly yours,

"Frank Kell."

When Harvey received the letter he passed it to the bookkeeper, and the following notation was made on the ledger page carrying Kell's account: "August 30, 1919: this interest transferred to Mrs. Frank Kell, Mrs. O. C. Bullington, Mrs. J. F. O'Donohoe, Miss Willie Mae Kell, Mrs. Wiley Blair, Jr., Joe A. Kell, Miss Sybil Kell, and Miss Mary Joe Kell, share and share alike."

■ Thereafter the interest was always carried on the books in the names of these persons. They made their income tax returns as owners of this interest, and, while it is true that the legal title to the land was not changed but remained in Harvey or Kell, according to where it had been standing, and Kell handled the moneys, including their use to discharge the mill notes, which were received from and on transactions with reference to this one-fourth interest in the account, he held the title to, and handled the matters concerned with, the interest, not for himself, but as trustee for his wife and children to whom he had conveyed it. The Board in its opinion states "the facts are not at all clear. From some of the incidents it would appear that it was never the intention of Kell to make a gift of anything other than the profits to be derived by him from the ownership: Other facts taken separately tend to show that he made an absolute gift of his entire partnership interest. Under these circumstances, we must consider all of the evidence before us which reflects the intention of the donor and from the complete picture draw our conclusions. Based on these considerations, it is our opinion that no effective gift was made by Kell of his interest in the R. O. Harvey Lease Account." We cannot agree with the Board that the facts are not clear, or that they have any tendency to support the finding it made that Kell's interest was not effectively transferred to his wife and children. If anything was needed to complete the gift beyond what Kell said to Harvey in

May, 1918: "I want this transferred so that it will be the property of Mrs. Kell and the children—the title passed from me; and I want it to be their property from this on, so that the question of income or return which may accrue from it would come to them and not to me," it was completely supplied by the letter and the book transfer. The fact that Kell continued to handle the money, that he agreed with his associates that his responsibility as between him and them would still continue, and the fact that he deducted from the first returns $15,000, being only a part of the moneys he had advanced on account of this interest in the Harvey lease account after he had agreed with his wife and children that they were to have that interest, is, in our opinion, without significance to change the legal import and effect of his verbal and written directions. The fact that, though nothing was said between him and his family about his continuing to make contributions to the capital of the partnership if needed, he did make such contributions, and did later reimburse himself in part for them, does not, in our opinion, tend at all to indicate that the agreement and directions for transfers that he made were pretended or simulated. We think the evidence, taken as a whole, admits of only one conclusion, that Kell divested himself not of the profits, but of the interest from which the profits were derived. Rose v. Commissioner (C.C.A.) 65 F.(2d) 616; Commissioner v. Olds (C. C.A.) 60 F.(2d) 252; Copland v. Commissioner (C.C.A.) 41 F.(2d) 501; Champlin v. Commissioner (C.C.A.) 71 F.(2d) 23; Marshall v. Commissioner (C.C.A.) 57 F.(2d) 633; Tracy v. Commissioner (C.C. A.) 70 F.(2d) 93.

■ Upon the second general matter, the profits from the sale by Kell to Hamon, we are convinced that the Board's decision was right. Of the first complaint that an allowance should have been made to Kell on account of the unpaid material bills which Hamon agreed to, but did not pay, little need be said by us. As pointed out in the brief of the respondent the point made before the Board was that, because of the existence of these contingent liabilities, the matter should not be regarded as a closed transaction. Before us that point is not made. It is for the first time rather feebly and indefinitely urged that some effect, exactly what is not clear, should be given in the computation to the facts of these outstanding bills. In respondent's brief it is

456

pointed out that though Hamon did not pay them, the railroad company did, so that Kell has suffered no loss on account of them. We think it plain that as to this item he has not sustained his burden to show that the Commissioner erred. McGinley Corporation v. Commissioner (C.C.A.) 82 F.(2d) 56. The second complaint that the grants and donations in aid of the construction of the railroad company should be taken into account in arriving at the basic cost to Kell and his associates of the interest in the railroad building venture they sold to Hamon, while more debatable, is not, we think, any more substantial. This complaint proceeds upon the theory given some support by expressions in the contract between Kell and Hamon for building the railroad, that these grants were made to Kell and Hamon as their own property to do with as they pleased, not to them in trust for and dedicated to the building of the railroad. The contracts with the donors do not bear this out. They show by various provisions that all parties understood that the grants were to be used in aid of, by entering into the construction of the road, and that they were not to be otherwise used. Everything in the record, petitioner's pleadings, his testimony, his contract with Hamon, construed as a whole, confirms this. In no place in the record is there to be found support for the view his argument maintains. In the contract between Kell and Hamon it was stated: "All of said property, money, rights, and benefits so acquired or obtained by the respective parties hereto, for the use and application to railroad purposes, shall be devoted to those purposes, and transferred, assigned, and properly conveyed to the proposed railroad corporation, (later to be incorporated as hereinafter provided for; and to be so transferred, assigned, and conveyed to said corporation) when and as hereafter the same shall become necessary and proper."

■■ In his petition for review it was said of them by petitioner that, in consideration of aids, grants, and bonuses, the petitioner and his associates had agreed that they, or the corporation to be organized by them, should build, construct, and operate a line of railroad through the communities where such aids, grants, and bonuses were given. Petitioner further alleged that all bonuses, aids, and grants were used in the construction of said railroad, and no part thereof distributed to petitioner or his associates. In his testimony petitioner said "we entered into a firm and binding contract, and executed a bond that we would build a railroad and the citizens in turn were to provide certain right of way, and certain local aid and terminals. These aids, moneys and rights of way were made in accordance with the terms of the bonus contract. They were fulfilled and the moneys and the property turned over. The moneys were used in the construction of the line. All funds received under the local aid contract were expended for that purpose, and all aid, terminals and rights of way were used for the account of the railroad. These moneys were actually expended in the construction of the line. They were credited up to Frank Kell, Trustee, on the books of the Company. The railroad company carried these moneys on its books to Frank Kell, Trustee, and as expended they were charged against that account. I did not get any of these moneys myself personally and none of my associates got any. This money never went into my bank account. It was handled in the railroad company's books entirely and actually expended by the railroad company." Referring to the bonus contracts, he testified "in each of these contracts there was an obligation on the part of both parties. They were to furnish certain terminals, certain rights of way and certain local aid. In consideration of that we would build this railroad." Thus the situation stands revealed in its true light. Kell and Hamon as promoters were to organize a railroad corporation and to supply all funds necessary to its construction except such as might be furnished it in the form of rights of way, donations, and grants in aid by interested citizens and communities. They did this, and in doing it received for the corporation, as donations in aid, rights of way, and considerable sums of money. Whatever they furnished over and above these donations of course properly enters into the cost to Kell and his associates of their interest in the road. What the corporation received in the form of these donations cannot be regarded as a part of Kell's cost. Cf. Southern Power & Manufacturing Co. v. Commissioner (C.C.A.) 82 F.(2d) 104. In arriving at the cost to Kell and associates, the Commissioner properly excluded these gifts and donations to the railroad enterprise, and the Board correctly sustained his determination. The order complained of is reversed in part and affirmed in part, and the proceeding is remanded to the Board, with directions to cause the tax to be computed in accordance herewith.