## BARDACH v. COMMISSIONER OF INTERNAL REVENUE.

### SHAPOFF v. SAME.

Nos. 7204, 7205.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1937.

324

James B. O'Donnell, of Cincinnati, Ohio, for petitioners.

W. C. Jennings, of Washington, D. C. (Robert H. Jackson, Sewall Key, and Harry Marselli, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

In these cases a single opinion will suffice.

In No. 7204, petitioner Bardach seeks a review of a decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing against him on redetermination a deficiency in income taxes for the year 1929 in the sum of $9,985.97.

In No. 7205, petitioner Shapoff seeks a review of the decision of the Board affirming the action of the Commissioner in assessing against him on redetermination a deficiency for the same year in the sum of $10,463.40. The question is whether dividends paid on certain stock, and profit realized upon the sale of part thereof, were properly included in the income of petitioners, or whether they had made gifts of the stock to their wives.

.The facts are that prior to 1923, Bardach and Shapoff were partners under the name of Leonard, Custom Tailors. In that year the Leonard Custom Tailors Company was organized to take over the partnership with a capital of $250,000, consisting of 2,500 shares of the par value of $100 each.

In 1924 and 1925 the corporation issued 475 shares of stock to Shapoff and a like number to Bardach. On February 15, 1924, it issued one share to E. Shapoff, wife of petitioner Shapoff. On March 1, 1926, 475 shares of the stock held by Shapoff were reissued to E. Shapoff, and 445 shares of that held by Bardach were reissued to his wife, Rose Bardach, and one share to Bardach himself. On January 1, 1926, the certificate for the remaining shares held by Bardach was assigned to Shapoff and was reissued to E. Shapoff.

On June 30, 1926, certificate No. 35 for 150 shares was issued to E. Shapoff, and on June 29, 1927, certificate No. 37 for 50 additional shares was issued to her. She then held of record 706 shares. On the same dates certificate No. 36 for 130 shares and No. 38 for 40 shares, respectively, were issued to Rose Bardach, who then held of record 615 shares. These certificates, Nos. 35, 36, 37, and 38, were charged to allotments made to petitioners when the corporation was organized. There were no changes in the record stockholdings from June 29, 1927, to August 2, 1929, except the reissuance on July 2, 1928, of a single certificate, No. 47 to Rose Bardach, and a single certificate No. 49 to E. Shapoff, for the certificates theretofore issued to them.

On August 2, 1929, certificates Nos. 47 and 49 were reissued. For certificate No. 47 Bardach and his wife received certificates for 350 and 265 shares, respectively, and for certificate No. 49 Shapoff and his wife received certificates for 360 and 346 shares, respectively.

On September 4, 1929, the capital stock was increased to 50,000 shares of no par value and it was agreed between the stockholders that 18.4 shares of the new stock

should be issued to record stockholders for each share standing in their names on August 2, 1929. The stock was accordingly so issued. Out of the no par stock thus issued to Rose Bardach, she, on September 10, 1929, sold 1,720 shares for $39,237, which was paid to her by check, and out of the stock issued to E. Shapoff she, on the same date, sold 2,208 shares for $50,-370, which was paid to her by check. Dividends for the year 1929, as well as for the previous years 1926 and 1927, were computed on the basis of the holdings of the petitioners and their wives.

In July, 1925, the corporation, being authorized by its board of directors, opened two accounts. One was with "L. M. Shapoff and Mrs. L. M. Shapoff" and the other was with "Max Bardach and Mrs. M. Bardach." Some of the dividends paid on the stock in the names of petitioners and their wives were credited to the joint accounts and at their request charges were entered therein. The par value of certificates 36 and 38 which were originally issued to Rose Bardach was charged to the Bardach joint account, and the par value of certificates 35 and 37 originally issued to E. Shapoff was charged to the Shapoff joint account; thus these shares were paid for out of dividends.

Bardach and Shapoff did not, for the year 1929, include in their income tax returns the profits on the sales of stock made by their wives on September 10, 1929, nor the dividends received thereon by them for that year. Although these profits and dividends were returned by their wives, the Commissioner assessed petitioners with these deficiencies and the Board sustained the Commissioner in both instances.

Petitioners each claimed that the stock so sold represented "gifts" to the wives by the husbands and that the petitioners were not taxable upon the profit and dividends therefrom under the Revenue Act of 1928, c. 852, § 22, 45 Stat. 791, 797 (26 U.S.C.A. § 22 and note). Petitioner Shapoff testified that he purchased the 30 shares represented by stock certificate No. 18 from Bardach, to whom the certificate had been originally issued, and made his wife a present of these shares on January 15, 1926, when the new certificate, No. 23, was issued to her therefor, and that Mrs. Shapoff knew of this transaction; that on

March 1, 1926, he made a present to his wife of the 475 shares, the certificate for which, No. 24, was reissued to her; that he thought it would be a good idea for protection for herself and the children that she should own that certain amount of shares of the stock in the company; that he told his wife of this transfer on the books of the company.

Bardach testified that after talking to his wife he had certain certificates consolidated into certificate No. 25 for 445 shares issued to her; that he brought the certificate home and gave it to her on March 1, 1926; that he and his wife had spoken about the matter and had decided that she should have the certificate for the protection of herself and children; that he thought she kept it at home for some time with her private papers.

Shapoff testified that he and his wife had a joint bank account to which his wife credited some of the dividends paid to her on the stock standing in her name; that she exercised the privilege of issuing checks upon this account; that they also had a safety deposit box to which each had access; and that he believed certificates 23 and 24 were kept in the box.

Bardach testified that he kept an individual bank account and that when many of the dividend checks were issued to his wife on the stock in her name he would bring them home and show them to his wife, and she would allow them to be deposited in his account and would at any time call on him for any money that she needed, and that the proceeds from the sale of stock by her in 1929, and here in controversy, were also deposited in his personal bank account.

It also appears that for the years 1926, 1927, and 1928 bonuses were paid to both Shapoff and Bardach, which bore no relation to their stockholdings, but Mrs. Bardach as a stockholder ratified the 1926 payment and Mrs. Shapoff as a director and stockholder attended the directors' and stockholders' meetings at which payment of the bonuses was authorized and made no protest.

We think the Board erred in its application of the law to the facts. See Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343. The requirements necessary to constitute a valid gift

**326**

are set out in Edson v. Lucas, 40 F.(2d) 398, 404 (C.C.A.8). We in effect approved Edson v. Lucas, in Marshall v. Com'r, 57 F.(2d) 633, 634. There is nothing per se suspicious in connection with the gift of shares of stock by a husband to his wife. There is nothing illegal or improper about such a transaction. Marshall v. Com'r, supra, page 634; Tracy v. Com'r, 70 F.(2d) 93, 94 (C.C.A.6). We find no reason to discredit the positive testimony of petitioners that the gifts were made. We think their testimony stands unimpeached and should not have been disregarded by the Board. Blackmer v. Com'r, 70 F.(2d) 255, 257, 92 A.L.R. 982 (C.C.A.2). Such gifts for the purposes indicated were not unnatural. The transfers were regularly made and vested the legal title in the wives. The transfers upon the books of the corporation in themselves constituted delivery. Marshall v. Com'r, supra, 57 F.(2d) 633, at page 634. The law not only presumes the acceptance of the shares by the wives [Dulin v. Com'r, 70 F.(2d) 828, 831 (C.C.A.6)], but acceptance is clearly shown by their receipt of the dividend checks, their sales of portions of the reissued stock, and their receipt of checks in payment. What they did with the checks "is a matter of complete indifference." Marshall v. Com'r, supra, 57 F. (2d) 633, at page 634.

 We do not regard the matter of the joint accounts with the corporation as of critical importance. The corporation had a right to charge the wives with the purchase price of shares actually bought by them and to credit the joint account with their dividends. See Tracy v. Com'r, supra, 70 F.(2d) 93, at page 94. We think that the matter of the joint bank account and common safety deposit box of Shapoff and wife was inconsequential. The fact that petitioners as officers of the corporation received bonuses disproportionate to their actual shareholdings is not material to any issue here. The bonuses were authorized by the board of directors and no stockholder complained. See Taplin v. Com'r, 41 F.(2d) 454 (C.C.A.6).

The orders of the Board of Tax Appeals are reversed, and the cases remanded to the Board of Tax Appeals.