## HARDYMON v. GLENN, Collector of Internal Revenue.
### No. 656.

District Court, W. D. Kentucky,
at Louisville.
June 28, 1944.

Louis Seelbach and Hubert T. Willis, both of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., and R. N. Ivins, Sp. Asst. to the Atty. Gen., for defendant.

MILLER, District Judge.

The plaintiff, J. F. Hardymon, of Maysville, Kentucky, brought this action to recover from the defendant, Seldon R. Glenn, Collector of Internal Revenue for the District of Kentucky, the sum of $17,-570.68 with interest from December 16, 1942, which he claims he was illegally required to pay by reason of an erroneous income tax 'deficiency assessment for the year 1940. The assessment was the result of the refusal on the part of the Commissioner to recognize a family partnership entered into in January 1940 between the plaintiff, his wife and six children.

Prior to December 23, 1939 the plaintiff was the principal stockholder in each of three corporations, namely, J. F. Hardymon Company, with a capital of $100,000, Limestone Lumber Company, with a capital of $50,000 and the Burley Warehouse Company, with a capital of $100,000. The remaining stock in each corporation was held by different members of his family which consisted of his wife, four sons and two daughters, the youngest of which was over twenty-one. His oldest son Kenneth had worked with the businesses for 15 years. His daughter Lillian had acted as bookkeeper for some years, and two other sons had also worked with the businesses before they entered the armed services. The businesses had proved very successful and some two years prior to December 1939 the plaintiff began to consider a shifting of the responsibility of the management from himself to his children and the devotion of more of his time to the management of several farms. In addition, the existence and operation of three separate corporations was causing some tax and other complications which he wished to avoid. In November of 1939 he discussed his problems with a firm of accountants from Louisville, Kentucky, but reached no decision. About December 20, 1939 one of the accountants returned to Maysville and after conferring further with the plaintiff advised and assisted him in making a gift of 494 shares of the Limestone Lumber Company, constituting the entire ownership of the plaintiff in that corporation, to his wife and children. In order to take advantage of the annual

gift tax exemption to each donee 100 shares were distributed by gift on or about December 23, 1939, 16 shares being given to his wife and 14 shares to each of the six children. The remainder of the gift was deferred until January 3, 1940 when 58 shares were given to his wife and from 40 to 88 shares to each of five children. The stock certificates in each case were endorsed by the plaintiff and actually delivered to the donees and were thereafter transferred on the company's books to the respective names of the new owners with new certificates being issued and delivered to them for their respective interests. Stock transfer stamps were fixed to the certificate stubs and were properly cancelled. In due time gift tax returns were filed and the required gift tax was paid.

On January 4, 1940 the three corporations were dissolved by proper action with unanimous consent of all the stockholders in each instance. By deed dated, executed and delivered on January 4, 1940 the Limestone Lumber Company conveyed to the plaintiff, his wife and six children all the real estate with improvements thereon and personal property owned by the corporation. On January 5, 1940 written articles of co-partnership were entered into between the plaintiff, his wife and six children for the purpose of carrying on a general business under the name of J. F. Hardymon Company which included the different businesses previously conducted by the three corporations. The articles provided for the contribution of cash and other assets by the partners as follows:

| | |
|---|---|
| J. F. Hardymon | $115,705.97 |
| K. T. Hardymon | 43,149.20 |
| L. G. Hardymon (daughter) | 29,450.33 |
| J. C. Hardymon | 27,289.37 |
| O. G. Hardymon | 22,731.83 |
| P. B. Hardymon | 22,731.83 |
| A. H. Little (married daughter) | 20,019.44 |
| F. V. Hardymon (wife) | 17,370.48 |
| Total | $298,448.45 |

The foregoing contributions to the capital of the partnership were effectuated by the eight individual partners transferring at that time to the partnership their respective individual interests in the three corporations which had been dissolved on the day previous thereto. Partnership books were set up crediting to each partner his share in the partnership assets.

The books also reflected the liabilities of the three dissolved corporations.

Articles 6, 12, 13 and 14 of the articles of co-partnership provided as follows:

"6. It is agreed that until his death, or until these articles of co-partnership are otherwise amended, active control of the partnership, employment and discharge of employees, naming salary rates, and final decision in all matters, shall be vested in J. F. Hardymon. Other partners shall have no authority to bind the firm in contracts with outside parties except as authority to contract is delegated by said J. F. Hardymon.

"12. In the event of the death of J. F. Hardymon, the remaining partners shall have equal voice in the management of the business.

"13. It is hereby agreed that no partner shall withdraw from the Company, any cash, materials, or any values belonging to the Company without authority from J. F. Hardymon.

"14. It is further agreed that in case of dissolution, the goodwill, books, records, etc., shall be the property of J. F. Hardymon."

Other articles provided for the keeping of a complete and correct set of books for the partnership with the right of reasonable inspection in each partner, the obligation of each partner to use his best efforts and utmost skill to promote the interest of the partnership, for the continuation of the partnership in case of death or withdrawal of any partner during any fiscal year, and for the valuation and purchase by the remaining partners of the interest of any partner withdrawing, the obligation on the part of each partner that any withdrawal from the firm on his part would be done in such a way that it would not cripple or interfere with the necessary working capital of the company, and for the right of the firm to continue to use the firm name and its goodwill in the event of the retirement, death or bankruptcy of any partner.

Following the execution of the articles of co-partnership the three businesses formerly conducted under corporate form were continued in operation by the partnership, largely under the direction and management of the son Kenneth and the daughter Lillian. In January 1940 the plaintiff owned three farms and after the formation of the partnership purchased

three more, which brought his total farm acreage up to approximately 2,000 acres of farm land in Kentucky and Ohio. The farms were operated by tenants under supervision of the plaintiff. The activities of the plaintiff were largely shifted from active participation in the partnership businesses to the operation of his farms. The operation of the partnership was successful and the net profits therefrom were regularly divided equally among the eight partners, namely, one-eighth to each partner. The ones who worked with the partnership also received salaries. Each partner's investment in the business has been considered and treated as his own separate property and individual investment in the partnership. No partner has returned to the plaintiff any portion of the gift which he or she received from the plaintiff nor any part of his or her share of the net profits from the partnership business. Before the plaintiff made the gifts of stock in the three corporations to his wife and children he had talked with them generally for some time about the advisability of a partnership over the corporate form of operations, but had reached no decision in his own mind and had no agreement with any of his family to do so prior to making the gifts of corporate stock on December 23, 1939 and January 3rd, 1940. Said gifts were not conditioned upon any contract or enforceable agreement on the part of the wife or any of the children that after becoming stockholders in said corporations they would dissolve the same, and the plaintiff was advised by the accountants that following the making of the gifts to his wife and children there would be no obligation upon them in any way to dissolve the corporations and to operate as a partnership if they did not voluntarily desire to do so. The plaintiff requested the accountants that the gifts to his wife and children be handled in such a way that they would be absolute and unconditional gifts with no strings or obligations attached, and such purpose was carried out. Following the partial gifts on December 23, 1939, one of the accountants returned to Louisville, Kentucky, and drafted tentative articles of co-partnership, which were reviewed by one of the senior members of the firm and then submitted to the plaintiff and his daughter Lillian before the final draft with some changes from the original draft was drawn up. It is customary in many cases where the partners are more than a few to have one partner named and agreed upon as the managing partner with authority to run and operate the partnership business.

The plaintiff and each member of the new partnership filed income tax returns for the year 1940 and in each instance reported gains resulting to each member by reason of the gifts of stock hereinabove referred to and the subsequent dissolution of the corporations and the distribution of their assets, and in each instance paid the tax upon such gains. Each one also included his respective share of the partnership profits. In November 1941 the plaintiff was advised by the Bureau of Internal Revenue that it was asserting a deficiency of his income taxes for the year 1940 in the sum of $15,729.98, due to the determination of the examiner that the gifts of stock by the plaintiff to his family were not bona fide transactions, and that the gain on the dissolution of the Limestone Lumber Company together with most of the partnership profits constituted taxable income to the plaintiff. Following conferences in the matter, the Commissioner made an income tax deficiency assessment in that amount on August 6, 1942, which together with interest in the amount of $1,642.56 plaintiff paid on December 16, 1942. Following a denial of claim for refund this action was timely brought for its recovery.

The defendant contends that Sections 181 and 182 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 181, 182, dealing with the taxation of income of partners is not applicable. He relies upon the general principles laid down by the Supreme Court in the following cases: Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81.

These decisions hold that there should be a realistic approach on the part of the court to tax situations, that the Government may look at actualities rather than the technical form employed by taxpayers for doing business, that the command of income and its benefits mark the real owner

of property and the recipient of income therefrom, that the dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid, that the fruit must be attributed to the tree on which it grows, and that a scheme entered into for the purpose of avoiding taxes which is unreal and merely a sham should be disregarded by the courts as merely a fiction inconsistent with the real purpose of income tax legislation. Reliance is particularly placed upon the following decisions which applied these rules and refused to recognize a family partnership formed for the purpose of distributing the income tax burden between the members of a family unit: Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Tinkoff v. Commissioner, 7 Cir., 120 F.2d 564; Earp v. Jones, 10 Cir., 131 F.2d 292; Mead v. Commissioner, 5 Cir., 131 F.2d 323; Schroder v. Commissioner, 5 Cir., 134 F.2d 346; Canfield v. Commissioner, Tax Court Docket No. 112451, February 9, 1944; Tower v. Commissioner, March 3, 1944, 3 T.C. 396; Miller v. Commissioner, U.S.Tax Court Docket No. 3300, March 18, 1944.

The plaintiff recognizes the controlling effect of such decisions in cases where the method employed to avoid taxes is not a bona fide transaction, but contends that transactions entered into by taxpayers which are legal and bona fide business arrangements can not be upset merely because the parties have entered into them for the purpose of minimizing or avoiding taxes which might otherwise accrue, and that each case is essentially one for decision upon its own particular facts involved. Plaintiff's contention also appears to be well established by strong Federal authority. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Marshall v. Commissioner, 6 Cir., 57 F.2d 633; Commissioner v. Yeiser, 6 Cir., 75 F.2d 956, 958; Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200; Suhr v. Commissioner, 6 Cir., 126 F.2d 283; Central National Bank of Cleveland v. Commissioner, 6 Cir., 141 F.2d 352.

 It appears settled in this Circuit that a husband may divide his income tax burden between himself and his wife by making a valid gift of dividend paying stock to his wife, who thereafter becomes liable for taxes on the income therefrom instead of the liability remaining in the husband. It is only essential that a valid gift of the stock be actually made. Marshall v. Commissioner, 6 Cir., supra; Bardach v. Commissioner, 6 Cir., 90 F.2d 323; See also Edson v. Lucas, 8 Cir., 40 F.2d 398. As was said by the Court in the Marshall case [57 F.2d 634]:

"There was nothing unlawful, or even mildly unethical, in the motive of petitioner, to avoid some portion of the burden of taxation. There is nothing illegal in a gift of shares of stock by a husband to his wife."

As was pointed out by the Court in the Bardach case the transfers of the stock certificates upon the books of the corporation into the names of the new owners in themselves constituted delivery and completed the gift. In Edson v. Lucas, 8 Cir., 40 F. 2d 398, at page 404, the Court sets out the essential elements required in order to constitute a valid gift as follows:

"There must be a donor competent to make the gift, a clear and unmistakable intention on his part to make it, a donee capable of taking the gift, a conveyance, assignment, or transfer sufficient to vest the legal title in the donee, without power of revocation at the will of the donor, and a relinquishment of dominion and control of the subject matter of the gift by delivery to the donee."

This definition was approved in this Circuit in the opinion in Bardach v. Commissioner, supra. All of those elements exist in the present case, and it necessarily follows that the gift by the plaintiff to his wife and children of his stock interest in the Limestone Lumber Company was a valid transaction and must be so treated even though its result is to reduce the income tax liability of the plaintiff.

 If we recognize the validity of the gifts of stock to the wife and children that is really the end of the question here involved. After they once become the unconditional owners of the stock it is immaterial what they as owners decide later to do with the stock. But the Commissioner contends that the gifts are so coupled with the dissolution of the corporations and the formation of the partnership, considering particularly the sequence of events in such a short period of time and the retention of control by the plaintiff in the articles of

co-partnership, that the three transactions are in reality merely one, resulting in a partnership which was not a bona fide one but merely a scheme or sham which would justify the Court in looking through the form to the actual substance of the transaction. Even if we assume that the unconditional and absolute character of the gifts could be ignored in the light of the events that immediately followed, it does not follow that the formation of the family partnership thereafter was either invalid or so lacking in good faith as to authorize the Court to disregard its legal effect. It has been specifically held in two cases from the Circuit Court of Appeals for this Circuit that the transfer by the owner of an interest in a partnership to his wife or daughter, and the continuation of the partnership in substantially the same manner as before does not prevent the transfer from being effective or from shifting the income tax liability thereafter to the new owner. Commissioner v. Olds, 6 Cir., 60 F.2d 252; Rose v. Commissioner, 6 Cir., 65 F.2d 616. See also Kell v. Commissioner, 5 Cir., 88 F.2d 453; Humphreys v. Commissioner, 2 Cir., 88 F.2d 430; Copland v. Commissioner, 7 Cir., 41 F.2d 501; Champlin v. Commissioner, 10 Cir., 71 F. 2d 23; Pugh v. United States D.C., S.D. W.Va., 48 F.2d 600. As was pointed out in the Rose case [65 F.2d 618] the real question is "narrowed to the effect of the conveyance in constituting the beneficiaries partners in the firm's business and properties." In that opinion the Court clearly showed how the ruling of the Supreme Court in Burnet v. Leininger, supra, one of the cases relied upon by the defendant, was not applicable to the facts therein involved or to situations like the one before us now. Likewise the other cases involving family partnerships relied upon by the defendant contain factors which are not present in the case at bar, such as some retention of control on the part of the donor in the making of the pretended gift, or some agreement on the part of the donee in consideration of the gift to devote the property received to a specific purpose, or the lack of existence of a bona fide intention to actually create and operate a partnership in the true sense of the word. Whether or not a partnership actually exists depends essentially upon the real intention of the contracting parties and the terms of the partnership contract. As was said in Guthrie v. Foster, 256 Ky. 753, 755, 76 S.W.2d 927, 928,

" 'strictly speaking, a partnership never arises by operation of law. It is a question of contract and intention, appearing from all the facts of the case.' * * * 'A partnership is a status arising out of a contract entered into by two or more persons, whereby they agree to share as common owners the profits of a business carried on by all or any of them on behalf of all of them.' " It is not necessary to constitute one a partner in a business that he contribute to the common enterprise both capital and services. While there must be a community of interest in the business of the partnership and an agreement to share in the profits, and possibly also in the losses, yet one can become a partner in a partnership business by contribution of capital without devoting his personal services to the enterprise. Jewell v. Janes, 238 Ky. 63, 36 S.W.2d 875; Kell v. Commissioner, 5 Cir., 88 F.2d 453. See also Humphreys v. Commissioner, 2 Cir., 88 F.2d 430. Nor does the fact that one of the parties to the agreement is made manager of the common enterprise prevent the status of the partnership from existing. 47 Corpus Juris, Partnership, § 226. In the present case the necessary elements of a partnership actually exist. The relationship is the result of the voluntary and considered agreement of all the parties thereto; the business has been successfully carried on as a partnership for several years after the execution of the partnership agreement, and the good faith of the arrangement can only be attacked on the ground that it has the result of avoiding income taxes within the family unit. As pointed out hereinabove, that is not a valid ground of attack. We concede that if the evidence showed that the gifts from the plaintiff to his wife and children were conditional, or were made under any obligation on the part of the donees to thereafter dissolve the corporations and merge the assets into a partnership, the transaction would not withstand the scrutiny required by the Supreme Court decisions above referred to; but the evidence completely fails to establish either of those facts. The case is necessarily controlled by what the record shows rather than by what the Commissioner contends without supporting evidence. Although the plaintiff may have contemplated and expected that his wife and children would later be willing to dissolve the corporations and form a partnership, yet it is undenied by the evidence that there was no obligation on their

part to do so. The gifts created rights in them which they could exercise or not, according to their own judgment and decision. There is a marked legal distinction between creating rights which you trust will not be exercised and creating no legal rights at all; a transaction of the first kind changes existing legal relations between the parties, while the other does not. Johnson v. Commissioner, 2 Cir., 86 F.2d 710, 712.

The plaintiff is entitled to the relief prayed for in his complaint. Counsel will tender for entry findings of fact and conclusions of law according to such facts as are admitted by the pleadings and as supplemented by this opinion.