**DETROIT EDISON CO. v. COMMISSION-
ER OF INTERNAL REVENUE.**

No. 9187.

Circuit Court of Appeals, Sixth Circuit.

Nov. 30, 1942.

620

Norris Darrell, of New York City, and Harvey A. Fischer, of Detroit, Mich. (Norris Darrell, of New York City, Oscar C. Hull and Harvey A. Fischer, both of Detroit, Mich., and Edward H. Green and Sullivan & Cromwell, all of New York City, on the brief), for petitioner.

Arthur Manclla, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp.

Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This is a proceeding for a review of a decision of the United States Board of Tax Appeals to redetermine a deficiency in petitioner's income and excess profits taxes for the years 1936 and 1937 in the respective amounts of $4,031.04 and $6,267.94. A single issue is presented, viz., what sum, if any, petitioner is entitled to deduct from gross income on account of depreciation of a capital asset, the cost of which was contributed by prospective users of its electric lines.

The petitioner is a public utility corporation of New York, licensed to do business in Michigan, and is engaged in generating and selling electric energy in the city of Detroit and surrounding territory and operates under the jurisdiction of the Michigan Public Service Commission.

Petitioner, in connection with the distribution and sale of electric energy, from time to time receives applications for extension of its transmission or distribution lines to places which, in petitioner's opinion, are situated too far from its existing lines to warrant the expenditure of the amounts necessary to make such extensions. In such cases petitioner, prior to the construction of the desired extension, requires the applicant to pay to it a sum representing the estimated cost per mile for construction of such extension, which is agreed to in writing.

The record shows four types of agreements: (I) The customer shall pay to the petitioner in cash the estimated cost of constructing the line and procurement of the right-of-way. At the end of each calendar year, beginning with the end of the year of construction and for four years thereafter, petitioner agrees to refund to the customer or his assignee an amount equal to one-half of petitioner's revenue from the line, the aggregate refund not to exceed the amount contributed by the customer.

(II) The customer in no event is entitled to recover any part of his contribution.

(III) The customer is entitled to a refund of $60 for each additional customer not named in the contract connected with the original extension after its completion,

provided, however, that no refund shall be made after the close of the fifth calendar year following that year during which the extension was built, nor shall the total refund in any event be in excess of the sum originally contributed by the customer.

(IV) The customer is required to provide a feasible and reasonable route for the extension of the service connection from petitioner's nearest pole in the highway to the location where said service is desired and shall furnish the necessary poles to support a transformer and its appurtenances and for the attachment of the wires and insulators and the customer shall deliver to petitioner a written permit from all interested parties granting the petitioner the right of erecting and maintaining on said pole line the wire and insulators necessary to properly furnish the service. The petitioner is to furnish at its expense all wires and insulators necessary to operate said service connection which shall be and remain its property and when service over the line ceases, petitioner shall be entitled to repossess all the materials so furnished but shall maintain and replace the entire extension including the poles so long as the service is in operation. If the petitioner furnishes and constructs the pole line, the customer shall pay the cost thereof and the customer recovers no part of his contribution.

The material and labor used in the construction of the line extensions under the foregoing contracts were paid from the general working funds of the petitioner and it made in its books of accounts entries identifying all work performed under the provisions of each respective contract.

Upon the completion of the line extensions, petitioner in accordance with its regular system of accounting entered upon its books as a property item the cost thereof. It made no book reduction in the cost of construction on account of the sums it had theretofore received from prospective customers. The cash payments received from applicants under contracts providing for contingent refunds were not earmarked in petitioner's accounts for the building of line extensions, but the sums received were carried into petitioner's accounts of free working capital. Petitioner's cash account was debited for the amount of the payments and credited to a liability account entitled "Customers Deposits for Line Extensions" and further classified as "Miscellaneous Unadjusted Credits." This method of accounting was in accordance with the accounting regulations of the Michigan Public Service Commission.

At the expiration of the period of refundment to customers, the petitioner transferred the unrefunded balances from "Miscellaneous Unadjusted Credits" to an account designated "Contributions for Extensions." There was also included in this account sums received from customers who were not entitled to refunds. On its books petitioner debited these sums to cash and credited them to "Contributions for Extensions." When the period expired for refundments to contributing customers, all remaining balances in the accounts were credited to surplus. During the years 1936 and 1937, petitioner's surplus was increased from this source $36,065.81 and $47,500.67, respectively. Neither of these items was included in petitioner's gross income. The Board found that petitioner's capital sum recoverable through depreciation allowance, with the exception of refunds, did not include the cost of construction of extensions where its prospective customers had contributed to petitioner a sum equal to the cost thereof. It accordingly reduced petitioner's capital sum for the purposes of depreciation the mean of the unrefunded balances of customers' deposits between the beginning and close of each of the years 1936 and 1937. These media for the years 1936 and 1937 were $1,166,712.27 and $1,208,496.01, respectively. The net result was the disallowance of $40,273.11 depreciation deduction for the year 1936 and $41,786.27 for the year 1937. These disallowances which petitioner seeks to have reinstated in these proceedings resulted in the deficiency in taxes.

Section 23($l$) of the Revenue Act of 1936, c. 690, 48 Stat. 1648, Internal Revenue Code, 26 U.S.C.A. § 23($l$), authorizes, as a deduction from gross income, a reasonable allowance for depreciation of property used in the trade or business of a taxpayer. Section 23(n) of the same Act, Internal Revenue Code, 26 U.S.C.A. § 23(n), fixes the basis for depreciation as provided in Section 114. Section 114, Internal Revenue Code, 26 U.S.C.A. § 114(a), provides that the basis for depreciation shall be the adjusted basis provided in Section 113(b) for the purpose of determining the gain or loss upon the sale or other disposition of such property.

Section 113(b) of the Act, Internal Revenue Code, 26 U.S.C.A. § 113(b), provides

the adjusted basis for determining the gain or loss from the sale or other disposition of property shall be the basis determined under Subsection (a) and further adjusted as provided under 113(b) (1) (A) which provides for adding or deducting from the 113(a) basis expenditures, receipts, losses or other items properly chargeable to capital account.

Section 113(a), Internal Revenue Code, 26 U.S.C.A. § 113(a) provides that the basis for determining gain or loss shall be (a) cost (a) (2) if acquired by gift after December 31, 1920, the same as it would be in the hands of the donor.

Section 113(a) (8) (B), Internal Revenue Code, 26 U.S.C.A. § 113(a) (8) (B), provides that property acquired by a corporation as paid-in surplus or as a contribution to capital, for the purpose of determining the basis of loss or gain, shall be the same as it would be in the hands of the transferor.

■ Depreciation deduction from taxable net income is a very familiar provision of the income tax statute but many complex factors enter into its determination. Like all other deductions, the allowance is a matter of legislative grace. The purpose of the statute is to create a fund to restore the property to the extent of the investment of the taxpayer at the end of its useful life. Basic to the allowance of depreciation is the determination of the capital sum to which the annual rate is to be applied. As will be noted from the enumerated sections of the Revenue Act on the subject, so far as the basic sum is to be determined, the sections of the statute authorizing the allowance are concatenated with the sections of the statute providing for the adjusted basis for the determination of gain or loss on the sale of capital assets.

■ The ultimate answer to the problem we have here is what would have been the basis for determining gain or loss had petitioner sold the assets in question. The cost of property to a taxpayer is the basis to be used in determining gain or loss from the sale or other disposition thereof, increased or decreased according to certain receipts, expenditures or losses chargeable to capital account.

■ When determining the cost of a depreciable asset not acquired by a purchase or exchange, but as we have here, from an aggregation of expenditures incurred in its creation, the expenditures, receipts, losses or other items, as the case may be, must be properly chargeable to the capital account which represents the depreciable property. All expenditures having some reasonable relationship to the asset are a part of its cost and likewise all receipts having some reasonable relationship to the asset, must be deducted from the cost.

■ The contributions made by the prospective users of petitioner's facilities had a direct relationship to the cost thereof and, in determining petitioner's cost, such contributions must be deducted under the express provisions of Section 113(b) (1) (A) of the Act. Petitioner had no capital investment in the depreciable property here in question. Southern Power & Mfg. Co. v. Commissioner, 5 Cir., 82 F.2d 104; Kell et al. v. Commissioner, 5 Cir., 88 F.2d 453.

■ As the facts appear in the record, the refunds which petitioner had contracted to make to its customers who had contributed the cost of the erection of the facilities were too indefinite in amount and time of payment to be capitalized as representative of their cost to the petitioner at the time such depreciable assets were constructed. There could then be no reasonable prediction as to the amount petitioner would ultimately refund. It is essential to the creation of an accruable liability or reserve that there be an agreement between the parties fixing the amount or that the amount due be determinable with reasonable certainty from the surrounding facts and circumstances. When the obligation is contingent, or indefinite as to amount, its accrual or payment is so uncertain that no charge can be made under any correct system of accounting. United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347; Weiss v. Wiener, 279 U.S. 333, 336, 49 S.Ct. 337, 73 L.Ed. 720; Brown v. Helvering, 291 U.S. 193, 205, 54 S.Ct. 356, 78 L.Ed. 725.

■ Section 113(a) (2) of the Act has no application to the facts in the case at bar. The contributions petitioner received under the contracts in question were neither gifts nor gratuities but were supported by considerations. Louisville & Nashville Railroad Company v. United States, 267 U.S. 395, 402, 45 S.Ct. 233, 69 L.Ed. 678; Edwards v. Cuba Railroad Company, 268 U.S. 628, 632, 45 S.Ct. 614, 69 L.Ed. 1124.

■ A gift is a voluntary transfer of property by one to another without any consideration or compensation therefor.

Under the contracts which were the source of the funds used to construct petitioner's improvements, it obligated itself to build the facilities and the contributors expected to obtain full remuneration by the use of the electric energy produced by petitioner.

Section 113(a) (8) (B) of the Act is inapplicable to the case at bar. The phrase "paid-in surplus" is a term commonly employed in corporate financing and accounting, to designate an account on corporate books. The surplus account represents the net assets of a corporation in excess of all liabilities, including its capital stock and such fund is available for distribution to the corporation's stockholders. None of the funds contributed by petitioner's customers under the contracts in question could have been used for the payment of dividends to petitioner's stockholders. They were for the express purpose of constructing improvements.

The phrase "contribution to capital" as used in the Revenue Act is a term which as ordinarily understood when applied to private corporations means the fund or property contributed or agreed to be contributed by the shareowners as the financial basis for the prosecution of the business of the corporation, such contributions being made either directly through stock subscriptions or indirectly through the transfer of property in exchange for a stock interest in the corporation. As thus used, the term signifies those resources whose dedication to the users of the corporation is made the foundation for the issuance of capital stock and which, as the result of the dedication, become irrevocably devoted to the satisfaction of all the obligations of the corporation. This conclusion is made clear when it is noted that Section 113(a) (8) is in conjunction with the sections of the act providing for transfers to corporations in connection with a reorganization. If petitioner had diverted the funds thus obtained to another purpose and had abandoned the project, the donors could have reclaimed their contributions. It is clear the contributions could not have been legally devoted to the satisfaction of all the obligations of the petitioner.

The Board reached the conclusion that the petitioner was entitled to include in its capital expenditures for depreciable assets, a sum equal to the amounts it had refunded to contributing customers in each year, over the useful life of the depreciable assets. Under the state of the record we are not called on to decide whether the refunds which petitioner made were capital expenditures having a reasonable relationship to the cost of a depreciable asset, or were ordinary and necessary business expenses. There is an essential difference between capital expenditures and deductions from gross income for ordinary and necessary expenses in carrying on a trade or business. Capital is a fund from which income flows or expenses arise. Since the Commissioner and the Board included in petitioner's depreciable capital account for each year the refunds made to petitioner's customers out of gross receipts, we are not permitted to disturb that allowance even if it were incorrect. Helvering v. Pfeiffer, 302 U.S. 247, 251, 58 S.Ct. 159, 82 L.Ed. 231.

The conclusion here reached is in conflict with the case of Arundel-Brooks Concrete Corporation v. Commissioner of Internal Revenue, 4 Cir., 129 F.2d 762, which is strongly relied on by petitioner. In our opinion the court in that case fell into error in not giving due weight to the concept that the elements of the taxing act in question do not stand independent and isolated from each other. They all combine to produce a specific rule for the determination of deductible depreciation. The word "cost" as used in Section 113(a) beyond question refers to the cost of the property to the taxpayer. This is made manifest when Section 113(a) is considered in the light of Subsection (2) which provides for a different base if the property is acquired by gift and also Subsection (a) (8) (B) which provides for a different basis if property is acquired by a corporation as "paid-in surplus or as a contribution to capital."

The court in the cited case assumed that the word "cost" as used in the statute related to the property and was not confined to the cost of the property to the taxpayer. The case of Nashville Warehouse & Elevator Corporation v. Commissioner, 6 Cir., 105 F.2d 883, also relied on by petitioner, is clearly distinguishable on its facts from the case at bar.

As we view it, neither the provisions of the act in question nor the interpretative regulations may be read fairly to authorize the deductions claimed by petitioner.

Order of the Board is affirmed.