**LEWIS JONES, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 8402.**

Circuit Court of Appeals, Third Circuit.

Argued Nov. 5, 1943.

Decided Dec. 16, 1943.

C. Walter Randall, Jr., of Philadelphia, Pa. (Walter B. Saul, Joseph A. Lamorelle, and Saul, Ewing, Remick & Harrison, all of Philadelphia, Pa., on the brief), for petitioner.

Helen Goodner, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges. :

McLAUGHLIN, Circuit Judge.

The petitioner is a public utility company owning and operating a central heating plant from which it supplies heat to various customers. Its distribution equipment, consisting of individual pipes, valves, etc. joined together, functions as a system. On May 31, 1937, the cost of that equipment was $411,270.73. Petitioner had paid $112,-832.10 of this amount, with its customers paying the balance of $298,438.63. From June 1, 1918 to May 31, 1937, the total depreciation allowed petitioner by the Commissioner of Internal Revenue on all of the assets making up the distribution system was $175,452.81. In the years 1938, 1939 and 1940, petitioner added to its system. These additions were paid for partly by the petitioner and the remainder by its customers. In the respondent's Notice of Deficiency, the petitioner was allowed depreciation at 2% per annum on the assets bought by it in those three years. This percentage of depreciation as to all of the years, is accepted as reasonable. Petitioner was not allowed depreciation for the latter three year period on the assets purchased by its customers. Claimed deductions by the taxpayer on the part of the system paid for by it, prior to 1937, were refused.

Since this appeal was perfected, the United States Supreme Court has decided the case of Detroit Edison Company v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 904; 87 L.Ed. 1286, affirming 6 Cir., 131 F.2d 619. That case holds that depreciation in such situation as this is allowable only on a taxpayer's "net investment" therein. This admittedly leaves one question remaining here. Is the petitioner entitled to any further allowance for depreciation on that portion of the system paid for by it prior to May 31, 1937. The cost to it, of those assets, was $112,832.10. Those assets were part of its system. Paragraph No. 6 of the Stipulation of Facts, which is incorporated into the Tax Court's finding of facts, reads: "6. The total depreciation allowed by the respondent during the period June 1, 1918 to May 31, 1937, on all assets referred to in Paragraphs 2 and 3 hereof and comprising petitioner's 'distribution system' was $175,-452.81."

The figures show that the petitioner has already been allowed in depreciation on its system considerably more than its net in-

vestment therein. Petitioner urges, however, that during the time in question, namely, from 1918 to 1937, it clearly set up the amounts expended by it and by its customers. It contends the mistake was that of the respondent and therefore, that it should be permitted to continue to depreciate the assets purchased by it.

The facts set out in the stipulation are scanty. For example, there is no reference at all to the taxpayer's books and just how the assets of the system were there set up. There are, however, constant allusions, throughout the short length of the Stipulation, to the distribution system. In Paragraph No. 2, it states that the petitioner at a cost of $112,832.10, acquired assets comprising a portion of its "distribution system." Again, in Paragraph No. 3, it is stated that the balance of the assets comprising its "distribution system" was paid for by various persons, etc. Paragraph No. 4 reads: "During the period June 1, 1918 to May 31, 1937, inclusive, the total depreciation sustained and allowed by the respondent on that portion of petitioner's 'distribution system' purchased by it and referred to in Paragraph 2 hereof was $35,366.31." Paragraph No. 5 is to the same effect with reference to depreciation sustained and allowed on that part of petitioner's "distribution system" paid for by petitioner's customers. Then follows the important Paragraph No. 6 above quoted. Paragraph No. 8, speaking of deductions asserted by petitioner for 1938, 1939 and 1940, significantly, makes no distinction between assets bought by petitioner and those paid for by the customers. It says: "8. The petitioner in its corporation income and excess-profits tax returns for the taxable years ended May 31, 1938, May 31, 1939 and May 31, 1940, claimed as deductions from gross income for those respective years depreciation on its 'distribution system' referred to in Paragraphs 2 and 3 hereof as follows: May 31, 1938, $17,677.49; May 31, 1939, $17,897.81; May 31, 1940, $14,816.08."

The Stipulation, as a whole, fairly indicates that the distribution system was recognized by both the petitioner and the Commissioner as an asset unit, with the total depreciation allowed on it as such. The inclusion by the petitioner, of the amount paid for by the customers, in its claims for depreciation through the years has resulted in excessive depreciation deductions during the earlier period. The net result of this is that the taxpayer's capital investment has been actually returned to it. The case is quite like the case of Hoboken Land & Improvement Co. v. Commissioner of Internal Revenue, this Circuit, 138 F.2d 104, 107, decided September 15, 1943. There in an item for depreciation classified as "Piers and Waterfronts," land, a non-depreciable asset, was included. This resulted in over depreciation. As in the instant case, there was no intentional misstatement by the taxpayer. The Hoboken facts, in one respect at least, went further than the present issue. There, the petitioner showed that its property ledger carrying separate accounts for each parcel of real estate and segregating lands and structures, was available to the revenue agent. Here, from the facts we have, there is nothing to indicate what petitioner's books would have disclosed. Certainly from the item "Piers and Waterfronts" one could as readily assume that land was included as to infer that a single "distribution system" containing assets of a kind, should be depreciated on some other basis than that of the unit itself. The Tax Court in this case found that "the depreciation allowed on petitioner's entire distribution system, including those parts paid for by its customers, exceeds the basis of the portions paid for by petitioner prior to 1938."

In the Hoboken case this Court said: "It is not disputed that the taxpayer received a tax benefit from the allowance. From the Board's opinion it is also clear that the depreciation appeared to be claimed on depreciable assets. What the taxpayer had in mind or what mistaken basis of calculation was employed becomes immaterial. There is by hypothesis error in any depreciation claim which is excessive. But the quality or degree of error is immaterial under the statute. Excessive depreciation was allowed on the taxpayer's assets. The cost basis must be reduced accordingly."

The decision of the Tax Court is affirmed.