**Stiles M. HARPER and his wife, Virginia L. Harper, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 66–102.**

United States District Court
D. South Carolina,
Columbia Division.

Oct. 5, 1967.

---

**810**

John C. Bruton, Kirkman Finlay, Jr., Boyd, Bruton, Knowlton & Tate, Columbia, S. C., for plaintiffs.

Terrell L. Glenn, U. S. Atty., Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., Mitchell Rogovin, Asst. Atty. Gen., Myron C. Baum, Norman W. Goldin, Attys., Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER

DONALD RUSSELL, District Judge.

This is an action to recover federal income taxes, plus interest thereon, allegedly overpaid for the calendar year 1959.

The facts, with one exception, have been stipulated by the parties and such stipulation is adopted as the findings of fact herein, with this single addition:

■ The plaintiffs-taxpayers offered testimony by an experienced forester that a partial casualty loss to a tract of timber could affect adversely the marketability of the undamaged timber on such tract, although this remaining timber sustained, as a result of the casualty, no damage. The forester, whose testimony was relied on for establishing this fact, had not seen the particular tracts of timber involved in this proceeding. While the opinion of such witness was supported with considerable reason in an appropriate situation, its value in the particular case was undermined by the agreed valuation of the timber herein, made after the casualty. That valuation, expressed in units of marketable timber, was the same *after* as *before* the hurricane. I find, therefore, that there was no diminution in the value of the marketable timber remaining on the tracts in question after the hurricane, measured in units, as a result of the partial loss.

The issue posed by this action is the deduction from income allowable as a result of a partial loss by hurricane of marketable timber on five separate tracts of land owned by the taxpayers. That the loss was caused by an event within the statutory definition of "casualty" is not disputed and the right to a deduction from income by the taxpayers is conceded. It is the amount of loss deductible that is in controversy.

The loss of marketable timber was calculated by estimating the difference in the quantity of such marketable saw timber (expressed in thousands of board feet) and pulpwood (expressed in cords) before and after the casualty, and multiplying such difference by the agreed market value of such units of saw timber and pulpwood on the date of destruction. This method of computing loss was in accord with the regulations of the Treasury Department (Reg. 1.165–7) and is accepted as proper by both parties. Under Section 165(b), however, the deductibility of such loss, may not exceed the taxpayer's "adjusted basis" of value for the property destroyed used in determining under Section 1011, 26 U.S.C.A., gain or loss from sale or other disposition of the property.[1]

The regulations issued by the Treasury Department covering casualty losses, provide that the valuation of the property, both in fixing the amount of loss and "adjusted basis", is to be determined "by reference to the single, identifiable property damaged or destroyed". Section 1.165–7, Regs. The taxpayers contend that the "single, identifiable property", to which "adjusted basis" is to be assigned for determining the extent of the loss deduction, is the total timber on all tracts at the time of the casualty, taken as a single, entire unit. Under

---

1. "Adjusted basis" in this case is the original cost since there has been no reduction by reason of depletion allowed or any cutting of timber. See, Detroit Edison Co. v. Commissioner of Internal Revenue (6th Cir. 1942) 131 F.2d 619, 622, aff. 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286.

this contention, the "adjusted basis" of the property destroyed would be $75,894.-00, and the loss would be fully deductible. It is the position of the defendant, on the other hand, that original cost of the timber must be proportioned among the measurable units of marketable timber[2] on all the tracts at the time of the casualty, thereby making each such divisible unit a "single, identifiable property", to which a specific "adjusted basis", as represented by a division of original cost, is allocated. Such "adjusted basis" for each measurable unit, thus established, would be multiplied against the measurable units destroyed, thereby establishing the deductible loss. It seems conceded that this formula would limit the taxpayers' deduction to the amount allowed by the Commissioner.[3]

▮ Under the Internal Revenue Code, "adjusted basis" of value of property is the statutory basis for determining "gain or loss from sale or other disposition" of property, the proper depletion allowance, and allowable casualty loss. The definition of "adjusted basis" is similar in all three instances.[4] The defendant argues, and it seems with compelling reason, that the same term defined as it is in similar language for purposes of calculating gain, depletion and casualty loss under the Internal

Revenue Code, should be applied in each instance in the same way. To apply "adjusted basis" one way in calculating gain or loss and depletion and another in fixing the allowable deduction for casualty loss would be illogical, and violative of established canons of statutory construction.[5] When Congress used the same term in several parts of a latticed body of related legislation, and gave to it in all parts the same statutory definition, the conclusion seems inescapable that Congress intended a uniformly consistent construction and application of the term.[6] Two recent Tax Court decisions support this conclusion. Rosenthal v. Commissioner, 48 T.C. 515; Broadhead v. Commissioner, 25 T.C.M. 133.

▮ There is no dispute between the parties about the formula for determining "adjusted basis" of marketable timber in the calculation of gain through sale or of depletion under section 1011. Had they sold the timber for which loss is claimed here, the taxpayers concede that the gain from such sale would have been calculated by reference to an "adjusted basis" established for each separate measurable unit of the timber sold (i. e., per 1 m. board feet of saw timber and cords of pulpwood). Indeed, the stipulation of facts sets forth that "it is common practice" to sell standing timber

2. That is, by board feet for saw timber and cords for pulpwood.

3. The reason for the difference between actual value of the timber destroyed and its "adjusted basis", both expressed in marketable units, is that timber is a growing crop, with an annual increase in marketable timber or about 5 per cent. Each additional year thus increases the amount of timber to be proportioned among the fixed original cost. As the timber units of marketable timber increase, the original cost, per unit, decreases. The "adjusted basis" per unit of merchantable timber will accordingly, year by year, increasingly be less than actual sale value thereof.

4. Section 165(b), which defines "adjusted basis" for calculating allowable casualty loss, states that it "shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other

disposition of property". Section 1011, which is thus specifically incorporated in Section 165(b), defines "adjusted basis" for "determining the gain or loss from the sale or other disposition of property". Similarly, depletion is allowable on "the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property." (Section 612) It is accordingly clear that "adjusted basis" is defined the same for purposes of determining gain, loss, or depletion.

5. United States v. Gilmore (1963) 372 U.S. 39, 45, 83 S.Ct. 623, 9 L.Ed.2d 570.

6. See, Bodzy v. C. I. R. (C.C.A.Tex. 1963) 321 F.2d 331, 335: "* * * the provisions of the Internal Revenue Code should be interpreted similarly where similar language is used in related code provisions * * *."

by such units (#6). Similarly, in determining depletion allowable under Section 612, 26 U.S.C.A., an "adjusted basis" would have been required for each measurable unit of marketable timber as distinguished from the timber taken as a whole on all five tracts. Since "adjusted basis" for calculating casualty loss under Section 165(b) is expressly declared to be that defined in Section 1011 for gain through sale or depletion, the conclusion seems inescapable that "adjusted basis" herein must likewise be established for each specific unit of merchantable timber rather than taken for the whole lot of timber on the five tracts as a single unit. This conclusion not only gives consistency to the application of Section 1011, which provides the common definition of "adjusted basis"; it fits in with the method used by the taxpayers themselves for fixing the amount of loss of merchantable timber sustained by them. In preparing their statement of merchantable timber destroyed by the hurricane, the taxpayers expressed the loss in terms of accepted units of timber measurement, giving to each such unit a separate value and thereby recognizing the proper divisibility of the timber into separate, identifiable units. A similar method of valuation would seem required in arriving at "adjusted basis".

Neither Helvering v. Owens (1939) 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292, nor Alcoma Association v. United States (C.C.A.Fla.1956) 239 F.2d 365, on which the taxpayers rely, is applicable to a case such as this. The first involved damage to a single property having an indivisible basis (i. e., a building); this case involves damages to property, which, in valuing it, the taxpayers themselves treated as divisible into separate units, each with its own separate value and basis.

In the *Alcoma* Case, a citrus grove was involved. The Court recognized that the Commissioner might have allowed "for the matching of the destroyed property with particular portions of the 'basis'; clearly for some kinds of property physi-cal separability means that each portion has its own 'basis' ". But that position was not urged by the Commissioner or considered by the Court. Here, the Commissioner does claim "physical separability", as evidenced even by the taxpayers' own formula for determining their loss. Moreover, there may well be a distinction between timber, grown for resale, and a citrus grove, not developed for sale itself and not growing in value, but intended to produce products for resale.

The taxpayers contend that though normally the same "adjusted basis" might be appropriate in all cases under the Internal Revenue Code, the Commissioner's proposed formula is inequitable under the unique facts of this case, since the timber left after the hurricane, while calculated in specific units, did not have the same marketability as before the hurricane. The reason for this reduction, it is claimed, is that, to some extent, the price to be paid for timber, even when purchased in units, will vary if the amount of merchantable timber is scattered unevenly over the tracts. Otherwise stated, the density of the timber tract reduces per unit cost of removal and increases unit price; conversely, removal of sparse timber is more expensive and this is reflected in reduced unit price. Expert testimony to this effect was offered by the taxpayers, which testimony was not based upon any inspection of the timber in question but was purely theoretical. The difficulty with such argument, however, as I have already indicated, is that in their calculations of loss, prepared by an experienced appraiser who viewed the timber on the tracts, the taxpayers gave the same unit value to the timber both before and after the hurricane. The theoretical considerations suggested by the expert witness did not appear to have been regarded by the taxpayers or by their experienced appraiser as justifying any reduction in the unit values of the merchantable timber on these tracts after the hurricane. Under such circumstances, it would seem the Commissioner would be justified in disregarding this contention.

Finally, the taxpayers urge that a sale is so different from a casualty loss that it is inappropriate to use the same formula in calculating loss (or gain, for that matter) in the two situations. This argument, it seems, is completely answered by the language of Section 165 (b), itself, which prescribes that casualty loss shall be determined in the identical manner in which loss from sale shall be ascertained. The statute is conclusive on the rights of the parties. After all, deductions are matters of "legislative grace", allowable "only as there is clear provision therefor", and do "not turn on general equitable considerations." Deputy v. duPont (1940) 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; C. I. R. v. Mendel (4th Cir. 1965) 351 F.2d 580, 582, note 4. And, "The burden is squarely upon the taxpayer to bring himself clearly within the statutory provisions authorizing the claimed deduction or exemption." Schubert v. C. I. R. (4th Cir. 1961) 286 F.2d 573, 582, cert. den. 366 U.S. 960, 81 S.Ct. 1919, 6 L.Ed.2d 1253.

Let judgment be entered for the defendant, and

It is so ordered.