**ST. LOUIS COUNTY WATER COMPANY**

v.

**The UNITED STATES.**

**No. 245–66.**

United States Court of Claims.

Dec. 10, 1971.

As Amended Jan. 7, 1972.

Cowen, C. J., dissented and filed opinion, in which Skelton, J., concurred.

N. Barr Miller, Washington, D. C., for plaintiff. J. Marvin Haynes, Washington, D. C., attorney of record. Joseph H. Sheppard, Walter D. Haynes, Jerome D. Meeker, Gerald K. Presberg, St. Louis, Mo., and Haynes & Miller, Washington, D. C., of counsel.

E. Alan Moorhouse, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C. of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION*

LARAMORE, Judge:

In this tax refund suit, plaintiff is seeking to recover $90,471.03 plus statutory interest on the amount of recovery, if any. Plaintiff asks this court to grant recovery by holding that the defendant was incorrect in assessing a deficiency in the amount of $37,460.88 for the year 1960 and $38,836.13 for 1961. Those deficiency assessments arose out of the following set of circumstances.

Plaintiff, since its incorporation in 1942, has been engaged in the business of supplying water to the inhabitants of St. Louis County, Missouri. It is a public utility type business and is, therefore, regulated by the Public Service Commission of Missouri. Plaintiff uses the accrual method of accounting and the calendar year as its taxable year.

During the taxable years of 1960 and 1961, the years here in question, plaintiff, in the normal course of operation, entered into contracts, to be described hereafter, for the extension of its existing water mains. These extensions, an essential facet of the business of the plaintiff as well as an essential need for the continued growth and well-being of St. Louis County, present the basis from which this case develops. In particular, it is the contracts to build these extensions that isolate and set forth the difficulties here to be resolved.

Those contracts required that whenever water mains were to be extended, the applicant for such extension was to pay plaintiff its estimated cost for such construction. The exact amount to be paid depended upon whether the extensions were to be made into (1) an area which was unoccupied and not as yet developed for residential purposes or, (2) into an area already occupied and developed, but in no event was the applicant expected to advance more than the actual cost of construction. In the first instance, covered by Rule 42 of plaintiff's standard contract, the applicant, usually a real estate developer, would advance to plaintiff the estimated cost of construction while in the second situation, i. e., extension into a developed area, the applicant would advance to plaintiff, pursuant to Rule 43, a sum $(X)$ equal to the excess of the estimated cost of extension construction $(A)$ over four times the estimated annual revenue $(B)$ from said extension $[X=A-4B]$. The contracts for extension also provide that the moneys advanced for construction will be refunded to the applicant, without interest, over a period not to exceed 10 years beginning from the date of completion of the extension. Those refunds are computed on the basis of the addition of new customers together with the amount of revenue received therefrom each year. The contracts further provide that refunds will not exceed the total advances and, consequently, as each year passes plaintiff refunds a portion of that amount originally advanced to it by the applicant, depending upon how many new customers have subscribed for service on the new extension. That amount has varied for each extension but on an average plaintiff expects to refund at least 58 percent of the advances.

At the end of the aforementioned 10-year period, if repayment has not been made in full, plaintiff is then entitled to retain the balance of that amount originally advanced. This privilege is permitted and approved by the Public Service Commission of Missouri in order that the plaintiff may have a method of financing extensions into areas where there are no water mains in streets or roadways. Be that as it may, in this case we are not concerned with the propriety or impropriety of allowing plaintiff to retain unrefunded balances of construction advances; instead, we are concerned with the method by which it recovers, for Federal tax purposes, that portion actually refunded and, in particular, we are concerned with the de-

---

* We are indebted to Trial Commissioner William E. Day for his findings of fact, which have been adopted in their near entirety, and for his recommended opinion, though we have substituted our own in reaching a different result.

preciation deductions stemming from the inclusion of the newly constructed extensions in plaintiff's depreciable asset account. Even more precisely, we are specifically concerned with the reasonableness of those deductions. Note, however, that we are *not* troubled by whether or not plaintiff is entitled to *some* amount of a depreciation deduction since it is conceded that plaintiff owns and maintains all extensions and at all times has the obligation to repair or replace any portion, or all, of any newly constructed main whenever necessary. Therefore, and to emphasize, we are concerned only with the reasonableness of plaintiff's depreciation deduction.

The depreciation deduction, as computed by plaintiff, is arrived at for purposes of Federal income tax in the manner to be hereinafter described.[1] Plaintiff, in accordance with practices developed at the creation of the corporation, first establishes a depreciable base for the water main extension to be depreciated.[2] That depreciable base for years one through ten of the existence of that asset is presumed to be 100 percent of the value of the extension. However, at the end of year 10, when plaintiff is no longer required to make refunds of amounts advanced in respect to the extension being depreciated, plaintiff reduces the depreciable base by the amount unrefunded. Plaintiff then continues to depreciate its remaining depreciable base over the remaining useful life of the asset. Plaintiff used this approach with a composite account for all its extensions for each of the years here in question, 1960 and 1961, and claimed the resulting depreciation figure as a deduction on its tax returns for those years. Following an audit of the plaintiff's Federal tax returns for 1960 and 1961 by the Internal Revenue Service, the plaintiff was assessed, on October 23, 1964, a deficiency plus interest of $90,471.03. Said deficiency was arrived at by the IRS through reducing the aforementioned depreciable base for the water main extensions to an amount which corresponds more closely to the total amount actually refunded with respect to each extension. By so doing the depreciation deductions for 1960 and 1961 were reduced to an amount which the Internal Revenue Service claims to be a reasonable allowance for the exhaustion, wear and tear of the qualifying asset.

On November 5, 1964, plaintiff paid the deficiency plus the interest thereon. On April 22, 1965, however, plaintiff filed its claim for refund of the amounts so paid plus interest on any refund. Thereafter, and on June 16, 1966, the Commissioner of Internal Revenue notified plaintiff that its claim had been denied. Following said denial and within three years thereof plaintiff filed suit in this court to have the question of reasonableness resolved. Our commissioner, in an opinion carefully considered by this court, found that plaintiff was not entitled to recover. That conclusion was premised primarily upon the findings that plaintiff did not use a proper basis for the assets in question and thereby incorrectly computed its depreciation deduction whereby plaintiff's income was not clearly reflected. On this appeal of that decision, plaintiff asserts that the efforts of our commissioner were misdirected and the question to be resolved is primarily one of reasonableness of the depreciation deduction thereby making the question of basis somewhat secondary. It is our opinion

---

1. It should be pointed out, however, that the explanation of the plaintiff's accounting practices to follow, as well as the explanation of how the Internal Revenue Service reconstructed the depreciation deduction, are somewhat oversimplified at this point so that the case may be more easily understood. For a more technical description of the accounting matters see the Findings of Fact, *infra*.

2. It should also be noted that the method of depreciation used by plaintiff for tax purposes is not the same as that used for purposes of determining the fair rate of return which the plaintiff is entitled to earn on its total capital dedicated to public service as regulated by the Public Service Commission of Missouri.

that plaintiff is correct for the following reasons.

In formulating his recommended opinion, our commissioner characterized the issue primarily as one involving depreciable base. It is not hard to determine why he felt this area to hold the answer to plaintiff's dilemma, since several cases decided prior to this case had been decided on the basis question. One of those cases, and the one whose facts are most similar to ours, is Elizabethtown Water Co. Consolidated, 7 T.C. 406 (1946). In that case the Tax Court, by Judge Opper, followed the precedent established in Detroit Edison Co. v. Commissioner of Internal Revenue, 131 F.2d 619 (6th Cir. 1942), aff'd, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286 (1943). Judge Opper in *Elizabethtown* noted that almost the exact issue concerning depreciation had been decided by *Detroit Edison* and he therefore saw little reason to distinguish the case. That precedent or practice as developed by the *Detroit Edison* case and perpetuated by *Elizabethtown* is to confront the depreciation deduction question in cases such as we have here in terms of the depreciable base for the assets involved. For instance, consider the statement made by the Sixth Circuit Court of Appeals, by Judge Hamilton, in the lower court's decision in *Detroit Edison, supra,* 131 F. 2d at 622:

> As will be noted from the enumerated sections of the Revenue Act on the

subject, so far as the basic sum is to be determined, the sections of the statute authorizing the allowance are concatenated with the sections of the statute providing for the adjusted basis for the determination of gain or loss on the sale of capital assets.

It is statements like these, together with a deep concern to be thorough, that have caused the question of the reasonableness of the depreciation deduction to be considered initially in terms of the basis of the asset to be depreciated.[3]

To be sure, this court does not feel that such an approach is in error. Indeed, it appears that it was essential to those cases and probably the only means by which they could be decided. However, in this case we feel that limiting our consideration to the basis question in hopes of resolving the reasonableness issue is not the best route to take. Note well, we do not say that basis is not relevant, because it surely is so, but we are of the opinion that since the creation of the accelerated depreciation provisions by the Internal Revenue Code of 1954 a different avenue of approach has been constructed and we intend to travel that route in determination of this case.[4] Nevertheless, it is also our intention to show that, even if one strictly adheres to the idea that the basis question must first be settled, our approach does not violate that traditional concept.

With the enactment of the Internal Revenue Code of 1954 came section 167.[5]

3. Because the question of basis is relevant to a veritable plethora of Code sections, other cases dealing with basis are as numerous as the Code sections to which they apply. Moreover, because of the general nature of section 446(b), which requires a clear reflection of income, the basis question can arise in several ways under that one section alone. *See, e. g.,* Clevite Corp. v. United States, 386 F.2d 841, 181 Ct.Cl. 652 (1967), dealing with the method of accounting as does Field Enterprises, Inc. v. United States, 348 F.2d 485, 172 Ct.Cl. 77 (1965) ; People's Bank & Trust Co., 50 T.C. 750 (1968), aff'd, 415 F.2d 1341 (7th Cir. 1969) ; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926) ; *see also,* Inter-City Television Corp., 43 T.C.

270 (1964) and cases cited therein where the basis question is discussed in relation to the straight line method of depreciation.

4. For a sampling of those cases dealing with the basis question prior to the 1954 additions, *see,* Portland General Electric Co. v. United States, 189 F. Supp. 290 (D.Or.1960), aff'd, 310 F.2d 877 (9th Cir. 1962) ; Columbus & Greenville Railway Co. v. Commissioner, 42 T.C. 834 (1964), aff'd per curiam, 358 F.2d 294 (5th Cir. 1966), cert. denied, 385 U.S. 827, 87 S.Ct. 61, 17 L.Ed.2d 64 (1966), and cases cited therein.

5. All references to the Code will be, unless otherwise indicated, to the 1954 Code.

(26 U.S.C. § 167 (1964)). This section authorized, as did its predecessor section 23(*l*) of the 1939 Code, as a deduction from gross income, a reasonable allowance for the exhaustion, wear and tear, including an allowance for obsolescence. However, unlike its predecessor, section 167 contained subsection (b) which described and authorized use of certain specific methods and rates for the depreciation computation. One of those methods is described by section 167(b) (4) as "any other consistent method." Said section provides that such a method should produce an annual allowance "which * * * does not * * * exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph 2 [167(b) (2)]." The allowance allowed by section 167(b) (2) is the declining balance method which could be used, during the years in question, at a rate not exceeding twice the straight line method. This section, *i. e.*, section 167(b), provides the starting point for the discussion of plaintiff's contention since it is plaintiff's position that this court need look no further than section 167(b) for a determination of the reasonableness of its deduction. It is this point, says plaintiff, that makes this case different from those where the basis question played a primary part.

■ Plaintiff alleges, and we tend to agree, that the test for determining the reasonableness of its depreciation deduction is to compare the allowance for depreciation which was actually taken by the taxpayer with the maximum allowance allowed by section 167(b). This test is gleaned, says plaintiff, from a plain reading of the statute where it recites that " * * * 'reasonable allowance' as used in subsection (a) [167 (a)] shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:". (26 U.S.C. § 167(b) (1964)) Therefore, application of the test requires merely a comparison of the allowance deducted with the maximum allowance possible under subsection (b) (2). Before making that comparison, however, it would be advantageous at this point to review the specific problem involved in this case so that the facts may be more easily applied to the foregoing legal discussion.

It will be recalled that defendant, through the Internal Revenue Service, challenged plaintiff's depreciation deductions for the taxable years 1960 and 1961. It did this by reconstructing plaintiff's depreciable base in water main extensions that were not 10 years old as of 1961 or 1962. Such recon-

Section 167 provides, in subsections (a) and (b), as follows:
"(a) General rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income.

"(b) Use of certain methods and rates. —For taxable years ending after December 31, 1953, the term 'reasonable allowance' as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:
"(1) the straight line method,

"(2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),

"(3) the sum of the years-digits method, and

"(4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and including the taxable year, does not, during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2).
"Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a)."

struction eliminated those amounts paid to plaintiff with respect to an extension which had not been refunded; in other words, the defendant claims that plaintiff did not take a reasonable allowance as a deduction for depreciation because that allowance was computed from an incorrect basis. Defendant says that until plaintiff has actually incurred the full cost of the extension it cannot compute its depreciation deduction on 100 percent of the value of the extension.

Plaintiff, on the other hand, contends that it is entitled to a reasonable allowance and furthermore that such an allowance is what has been deducted for 1960 and 1961. Plaintiff goes on to show that its allowance is computed with respect and in accordance with section 167(b) (4). That subdivision, as noted earlier, provides for "any other consistent method," which, says plaintiff, includes its method which has been referred to as a "modified straight line method."

■ It has been found, and we shall accept the finding because we are not convinced to the contrary, that plaintiff's method qualifies as "any other consistent method." This was found because plaintiff uses a form of computation that allows for accelerated depreciation and yet does not fall within subsections (b) (2) or (b) (3). Moreover, we are convinced, and it has been found as a fact, that the plaintiff has used this method of accounting since its (plaintiff's) incorporation in 1942; therefore, we find it to be a "consistent" method within the meaning of the statute.

■ Therefore, having determined that the method used by plaintiff is both an accelerated-type method and that it is consistently used, all that remains, says plaintiff, is to subject the allowance produced to the test as previously discussed. When this is done, and done even with the basis as reconstructed by the Internal Revenue Service, the test is satisfied. It is satisfied in that the depreciation allowance produced by using the double declining balance method, as prescribed by section 167(b) (2) and applied to a cost basis, yields a figure which is more than that figure produced by using plaintiff's method with the depreciable base of 100 percent of the asset during the first 10 years of its existence. Moreover, the deductions taken by plaintiff on a cumulative basis do not exceed that which could have been taken had plaintiff used the double declining balance with a cost basis. To make this point perfectly clear, consider the following figures submitted to the court as plaintiff's exhibit 1, where it is clearly evidenced that plaintiff's depreciation figures for the years 1960 and 1961 (column A) are less than those figures which represent the amount allowable under section 167(b) (2) (column C).

| | Actual | | The Test | |
| --- | --- | --- | --- | --- |
| | (A) | (B) | (C) | (D) |
| | Depreciation Actually Taken | Cumulative Depreciation Taken | Reconstructed Double Declining Balance Depreciation | Cumulative DDB Depreciation |
| 1954 | $32,018 | $32,018 | $47,538 | $47,538 |
| 1955 | 118,945 | 150,963 | 182,817 | 230,355 |
| 1956 | 210,435 | 361,398 | 324,667 | 555,022 |
| 1957 | 264,980 | 626,378 | 397,775 | 952,797 |
| 1958 | 302,444 | 928,822 | 433,655 | 1,386,452 |
| 1959 | 340,846 | 1,269,668 | 461,208 | 1,847,660 |
| 1960 | 385,100 | 1,654,768 | 500,216 | 2,347,876 |
| 1961 | 438,436 | 2,093,204 | 560,008 | 2,907,884 |

Notwithstanding, repeats defendant, plaintiff cannot prevail because it is including in its depreciable base, for the first 10 years, 100 percent of the value of the asset, a part of which it has not suffered as cost. To approve such a practice, alleges defendant, violates fundamental principles long accepted as solid concepts of tax law, the first of which being that before depreciation can be computed, the proper depreciable base must be established. *See,* 4 Mertens, Federal Income Taxation, section 23.21 (1966 Ed.).

Defendant's point being well taken, we will now deal with the basis question. Note at the outset, however, that the order of our discussion indicates that we consider this case to be one primarily concerning reasonableness of the depreciation allowance and not one of the proper depreciable base.

■ It has been said that one of the basic concepts ingrained into the tax law is that "elements of the taxing act * * * do not stand independent and isolated from each other." *Detroit Edison, supra,* 131 F.2d 619 at 623, aff'd, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286 (1943), and that, therefore, and as applied to our case, section 167(b) (4) cannot stand alone but must be read in conjunction with section 167(g). That section provides that "the basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis as provided in section 1011 * * *." Section 1011, when turning thereto, refers to section 1012 which establishes the basis for depreciation to be the cost of such property. With this rule, there can be no argument; moreover, we have no quarrel with the proposition that elements of an act must be considered together. As a matter of fact, we strongly advocate such practice; but, as a corollary to that practice, it should also be recognized that in considering relevant sections and subsections, the elements thereof should not be commingled to the point where the truly determinative part is engulfed by those that are only re-lated. In this instance and under the facts of this case, it is our opinion that section 167(g) is not the determinative one.

It is this section, or its predecessor section 23(n) of the 1939 Code, which has, in cases such as *Detroit Edison, supra,* led the courts to consider the basis question as primary, and it is this section that defendant points to in its argument that plaintiff's depreciation deduction is not proper. However, we are convinced, as noted, that this subsection, while obviously related and worthy of every consideration, is not an obstacle to our decision intimated at earlier. In more specific terms, we are of the opinion that subsection (g) of section 167 has been met with and satisfied. It has been applied and satisfied by plaintiff's demonstration to this court that through reconstruction of its depreciable base, using the cost basis as required by section 167(g) (*i. e.,* the very same cost basis advocated by the government in this case), its actual depreciation deductions taken are less than those possible under section 167(b) (2). Such a demonstration has a two-fold effect; first, it shows that plaintiff has satisfied all the requirements of section 167 and secondly, it aligns our decision with those which have been concerned primarily with basis as it applies to the depreciation area. The only difference in the latter instance is that those decisions which were principally concerned with the basis question had no other test upon which the depreciation deduction could be judged. Those cases did not have to be concerned with the innovations of the 1954 Code in the form of accelerated depreciation and the tests established pursuant thereto. Finally, we feel that the facts of this case dictated a decision first as to the reasonableness of the depreciation deduction and as a corollary we considered the basis question. Having been satisfied that plaintiff's depreciation deduction was reasonable, and being of the opinion that plaintiff's allowance is reasonable even when a reconstructed cost basis is used, we

have no other choice than to hold for the plaintiff. Consequently, plaintiff is entitled to recover and judgment is entered for plaintiff accordingly, with the exact amount of recovery to be determined pursuant to Rule 131(c).

COWEN, Chief Judge (dissenting):

I respectfully dissent from the court's opinion and would reach the same result as our trial commissioner, although on more narrow grounds.

Our commissioner saw the instant question as one of plaintiff's cost for purposes of ascertaining the depreciable base of water main extensions constructed under advance contracts. In so doing, he was guided by section 167(g),[1] providing that:

> (g) Basis for depreciation.—The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property.

Section 1011 refers to section 1012 which, in turn, provides that "[t]he basis of property shall be the cost of such property."

The court, however, finds a different approach in the creation of the accelerated depreciation provisions by the Internal Revenue Code of 1954. The rationale for this approach, as I understand it, is as follows: Section 167(a) allows as a deduction for depreciation a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business. Section 167(b), added by the 1954 Code, provides that "* * 'reasonable allowance' as used in subsection (a) shall include (but shall not be

limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:". Section 167 (b) (4) provides that one such method is:

> (4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and including the taxable year, does not, during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2) [the declining balance method at a rate not exceeding twice the straight line rate].

Since plaintiff's method of depreciation qualifies as "any other consistent method" within the meaning of subsection (b) (4),[2] the court holds that it is necessary only to compare the allowance for depreciation actually deducted by plaintiff with the maximum allowance permitted by the declining balance method at a rate not exceeding twice the straight line rate—the so-called double declining balance method. When this comparison is made, the court finds that the depreciation allowance produced by the double declining balance method upon the cost basis determined by defendant is greater than the allowance actually taken by plaintiff. Thus, the court concludes that the allowance deducted by plaintiff meets the "test" of section 167(b) that a reasonable allowance within the meaning of section 167(a) is an allowance computed under the section 167(b) (4) method without regard to the depreciable base used in the computation of that allowance.

1. Section 13(c) (1) of the Revenue Act of 1962, 76 Stat. 960, 1034 (1962) redesignated § 167(f), applicable to the years in suit, § 167(g).

2. I, as did the court, accept the trial commissioner's finding that plaintiff's method of depreciation qualifies as "any other consistent method" because I am

not convinced to the contrary. Although defendant contended that plaintiff's method was, in reality, only a straight line method with an erroneous basis for the first 10 years, defendant failed to produce at trial evidence to support its contention and rebut the testimony of plaintiff's expert witnesses to the contrary.

I can find no support for the court's holding that section 167(b) introduced into the 1954 Code authority for the approach taken by the court. In enacting subsection (b) into law, the congressional mind was concerned with the *timing* of the depreciation deductions by which the *cost* of depreciable property is recovered tax-free over the years of service. This congressional intent is made abundantly clear in the legislative history surrounding section 167 which provides in part:

> Present law allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. Depreciation allowances are the method by which the capital invested in an asset is recovered tax-free over the years it is used in a business. The annual deduction is computed by spreading the *cost* of the property over its estimated useful life. Most taxpayers use the straight-line method which spreads the *cost* evenly over the years, although other methods are available, including the declining-balance method subject to a limitation of the rate to 150 percent of the corresponding straight-line rate.

> \* \* \* \* \* \*

> There is evidence that the present system of depreciation acts as a barrier to investment, particularly with respect to risky commitments in fixed assets. Comparatively slow rates of write-off tend to discourage replacement of obsolete equipment and the installation of modern, up-to-date machinery. Under long-run peace-time conditions, in the absence of the inflationary pressures existing in the forced-draft economy of the postwar period, present tax depreciation methods might depress business capital expenditures below the level needed to keep the economy operating at high levels of output and employment.

Your committee's bill provides for a liberalization of depreciation with respect to both the estimate of useful life of property and the method of allocating the depreciable *cost* over the years of service.

> \* \* \* \* \* \*

> More liberal depreciation allowances are anticipated to have far-reaching economic effects. The incentives resulting from the changes are well timed to help maintain the present high level of investment in plant and equipment. The acceleration in the *speed* of the tax-free recovery of *costs* is of critical importance in the decision of management to incur risk. The faster tax writeoff would increase available working capital and materially aid growing businesses in the financing of their expansion. For all segments of the American economy, liberalized depreciation policies should assist modernization and expansion of industrial capacity, with resulting economic growth, increased production, and a higher standard of living.

> \* \* \* \* \* \*

> The changes made by your committee's bill merely affect the *timing* and not the *ultimate amount* of depreciation deductions with respect to a property. [H.Rpt.No.1337, 83d Cong., 2d Sess. at 22–25 (1954).] U.S.Code Cong. & Admin.News p. 4046. (*Emphasis supplied.*)

Furthermore, the report of the Senate Finance Committee states with respect to section 167(f),[3] the basis subsection:

> Subsection (f) corresponds to section 114(a) of the 1939 Code. \* \* \*. *No substantive changes are made.* [S.Rpt.No.1622, 83d Cong., 2d Sess. at 206 (1954).] U.S.Code Cong. & Admin.News p. 4842. (*Emphasis supplied.*)

In sum, the congressional intent was to provide for acceleration of the deductions for depreciation computed upon *cost to the taxpayer* as under prior law.[4]

---

3. See note 1, *supra.*

4. Further support for this position is found in section 167(c) which in part

Congress set forth in subsection (b) methods of allocating that cost over the years of service which would be deemed capable of producing the "reasonable allowance" deductible pursuant to subsection (a), provided the other statutory requirements were met. S.Rpt.No.1622, 83d Cong., 2d Sess. at 201 (1954), U.S. Code Cong. & Admin.News p. 4836. This is, in fact, the plain reading of the introductory language of subsection (b) from which the court gleans its "test" for determining the question of reasonableness.

Although the court believes, and I disagree, that section 167(g) is not determinative in this case, the court is also of the opinion that subsection (g) has been satisfied: "It has been applied and satisfied by plaintiff's demonstration to this court that through reconstruction of its depreciable base, using the cost basis as required by section 167(g), its actual depreciation deductions taken are less than those possible under section 167(b) (2)." I now turn to the question of whether subsection (g) has been satisfied.

This question was determined against plaintiff in the case of Elizabethtown Water Co. Consol., 7 T.C. 406 (1946), which, as found by the trial commissioner, cannot be distinguished from the case at hand. The issue in *Elizabethtown* was whether the taxpayer could include in its depreciable base the cost of installing water main extensions where the cost was deposited with the taxpayer subject to refund over a 10-year period. Defendant disallowed as a portion of the depreciable base the mean of unrefunded deposits between the beginning and close of the tax years in controversy. The Tax Court reviewed the existing authority and stated:

Were it not for a single aspect, this proceeding would be identical in principle with Detroit Edison Co. v. Commissioner [of Internal Revenue], 319

U.S. 98 [63 S.Ct. 902, 87 L.Ed. 1286] and would similarly call for disallowance of the depreciation deducted by petitioner on extensions and connections paid for by its customers. The controversy here, which was not reached in the Supreme Court's discussion of the *Detroit Edison* case, covers the extent to which petitioner's obligation to refund the payments in question to its customers avoids the rule of that case.

It might appear on superficial inspection that two classes of payments are involved—those which petitioner could no longer be compelled to return, and those which would still be returnable upon the specified conditions. Since, however, the view we take of the matter is otherwise, the two classes of payments will be dealt with together.

In our estimation, the present situation can not in any respect be adequately removed from the scope of the *Detroit Edison* principle. The sums in question, whatever the condition of their repayment, were delivered to petitioner, and used by it to construct the capital assets in question. To that extent they diminished the investment which petitioner out of its own capital, incorporated in the improvements —in other words, its own cost under the rule of Detroit Edison Co. v. Commissioner [of Internal Revenue]. When, if ever, the sums were repaid, for whatever reason, petitioner's investment would come into existence, but not until then. See Reisinger v. Commissioner [of Internal Revenue] (C.C.A., 2d Cir.), 144 Fed. (2d) 475. Even though it kept its accounts on the accrual basis, the obligation to repay was at all times too speculative to constitute an accruable liability. [7 T.C. at 411–12.]

In Detroit Edison Co. v. Comm'r of Internal Revenue, 319 U.S. 98, at 102,

---

provides that, for property otherwise qualified, the accelerated methods of depreciation set forth in subsection (b) shall apply "only to that portion of the

*basis* which is properly attributable to \* \* \* construction, reconstruction, or erection of which is completed after December 31, 1953." (Emphasis supplied.)

63 S.Ct. 902, at 904, 87 L.Ed. 1286 (1943), the Supreme Court declared:

> But we think the statutory provision that the "basis of property shall be the cost of such property" [§ 1012 of the 1954 Code] normally means, and that in this case the Commissioner was justified in applying it to mean, *cost to the taxpayer. (Emphasis supplied.)*

I do not think that plaintiff has met the cost basis requirement of subsection (g) by presenting computations which show that plaintiff's actual deductions for depreciation were less than the allowances that would have been authorized had plaintiff used the double declining balance method applied to a cost basis. Section 167(b) sets forth four accounting methods for computing depreciation of property. These include (1) the straight line method, (2) the declining balance method, (3) the sum of the years-digits method, and (4) "any other consistent method * * *". It is obvious from the wording and structure of the statute that the four authorized methods are in *pari materia.* The trial commissioner found that in computing its depreciation, plaintiff used a composite rate of 1.52 percent, representing an estimated composite average useful life of 65.79 years for plaintiff's depreciable plant. The trial commissioner described this as a modified form of the straight line method. Insofar as the case before us is concerned, it is one of the other "consistent" methods described in section 167(b). However, there is nothing in the statute which authorizes a taxpayer who uses any of the four methods to disregard cost as a basis in applying the method selected by him. Consequently, there is no more authority in the statute for plaintiff to disregard the cost basis of its property in applying its accounting method than there would be for a taxpayer using the declining balance method to apply that method to an erroneous and unrealistic basis other than cost. In order to satisfy subsection (b) (4) together with subsection (g), plaintiff's deductions pursuant to its method computed upon the *cost basis to plaintiff* must not exceed the allowances permitted by the use of the double declining balance method computed upon the *cost basis to plaintiff.* In other words, the subsection (g) cost basis requirement remains constant while plaintiff's annual allowance pursuant to its subsection (b) (4) method is tested against the subsection (b) (2) ceiling.

In my opinion, this is the only way that subsections (b) and (g) can be read in harmony. The result of the court's decision is to allow plaintiff to deduct depreciation computed upon a depreciable base which is presumed to be 100 percent of the value of a water main extension, rather than upon a base which is the *cost of plaintiff.* I regard this as a violation of the statutory mandate of section 167(g).

Since I think that the decision in Elizabethtown Water Co. Consol., *supra,* is controlling and that plaintiff is required to include in its depreciable base only the amounts actually refunded, it is necessary to consider plaintiff's alternative contention that its depreciable base is 58.6 percent of the total advances subject to refund. This is the amount which plaintiff says it can reasonably expect to pay for extensions constructed under its advance contracts according to plaintiff's past experience.

Plaintiff relies on Rev.Rul. 55–119, 1955–1 C.B. 352, and the case of John C. W. Dix, 46 T.C. 796 (1966), aff'd, 392 F.2d 313 (4th Cir. 1968), following the ruling, for the proposition that plaintiff can estimate its cost herein. In those situations, however, the taxpayer's annual cost was fixed and all that remained in order to determine the depreciable base was the valuation of what the taxpayer had agreed to pay. Plaintiff's annual cost is not so fixed but is contingent upon various conditions set forth in the advance contracts so that any valuation of what plaintiff has agreed to pay would be purely speculative. Where the taxpayer's obligation is of a contingent and speculative nature, the courts have refused to value the obliga-

tion and include any amount in the depreciable base. F. & D. Rentals, Inc. v. Comm'r of Internal Revenue, 365 F.2d 34 (7th Cir. 1966), cert. denied, 385 U.S. 1004, 87 S.Ct. 707, 17 L.Ed.2d 543 (1967); Detroit Edison Co. v. Comm'r of Internal Revenue, 131 F.2d 619 (6th Cir. 1942), aff'd, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286 (1943); Columbus & Greenville Ry. Co., 42 T.C. 834 (1964), aff'd per curiam, 358 F.2d 294 (5th Cir. 1966); Albany Car Wheel Co., 40 T.C. 831 (1963), aff'd per curiam, 333 F.2d 653 (2d Cir. 1964); Elizabethtown Water Co. Consol., *supra.*

Plaintiff's reliance on Crane v. Comm'r of Internal Revenue, 331 U.S. 1 (1947); Cambria Dev. Co., 34 B.T.A., 1155, 67 S.Ct. 1047, 91 L.Ed. 1301 (1936); Herzog Bldg. Corp., 44 T.C. 694 (1965); and McCormac v. United States, 424 F.2d 607, 191 Ct.Cl. 483 (1970), is also unfounded, because those cases similarly involved definite obligations where the amount which the taxpayer had agreed to pay was subject to valuation.

For the reasons stated above, I would hold that plaintiff is not entitled to recover and would dismiss the petition.

SKELTON, Judge, joins in the foregoing dissenting opinion.